1          UNITED STATES DISTRICT COURT
           MIDDLE DISTRICT OF FLORIDA
2           JACKSONVILLE DIVISION

3  UNITED STATES OF AMERICA,      Jacksonville, Florida

4          Plaintiff,      Case No. 3:16-cr-154-J-39JBT

5  -vs-                    Thursday, March 1, 2018

6  ANDREW RYAN LESLIE,      2:05 p.m.

7          Defendant.      Courtroom 12C
   _____

8

9              **TRANSCRIPT OF SENTENCING**
        BEFORE THE HONORABLE BRIAN J. DAVIS
10          UNITED STATES DISTRICT JUDGE

11

12              A P P E A R A N C E S

13  GOVERNMENT COUNSEL:

14       **Rodney Brown, Esquire**
         United States Attorney's Office
15       300 North Hogan Street, Suite 700
         Jacksonville, FL  32202

16

17  DEFENSE COUNSEL:

18       **Mark Rosenblum, Esquire**
         Federal Defender's Office
19       200 West Forsyth Street, Suite 1240
         Jacksonville, FL  32202

20

21  OFFICIAL COURT REPORTER:

22       Shelli Kozachenko, RPR, CRR, CRC
         221 North Hogan Street, #185
23       Jacksonville, FL  32202
         Telephone:  (904) 301-6842

24
                    (Proceedings reported by stenography;
25                      transcript produced by computer.)

# T A B L E   O F   C O N T E N T S

**COMMENTS IN ALLOCUTION:**                          **Page No.**

  SHARON LESLIE..................................          19

  DEFENDANT LESLIE..............................          20


**VICTIM STATEMENTS:**                               **Page No.**

  TRACEY SAYLES.................................          39

  DARREN BAKER..................................          41

# G O V E R N M E N T   E X H I B I T S   R E C E I V E D

                                                     **Page No.**

  GOVERNMENT'S EXHIBIT 1 .......................          29

<pre>
 1                    P R O C E E D I N G S
 2   Thursday, March 1, 2018                      2:05 p.m.
 3                         -  -  -
 4            COURT SECURITY OFFICER:  All rise.  United States
 5   District Court in and for the Middle District of Florida is now
 6   in session, the Honorable Brian J. Davis presiding.
 7            Please be seated.
 8            THE COURT:  Good afternoon to all.
 9            ALL:  Good afternoon, Your Honor.
10            THE COURT:  Court is convened today in connection
11   with Case No. 3:16-cr-154.  It's United States of America
12   versus Andrew Ryan Leslie.
13            And our record should reflect that Mr. Leslie is
14   present with counsel, Mr. Rosenblum, and that the government is
15   represented today by Attorney Brown, who is present with --
16            MR. BROWN:  If I could introduce --
17            THE COURT:  -- Lauren Britsch?
18            MS. BRITSCH:  Yes, Your Honor.
19            MR. BROWN:  Yes, Your Honor.
20            THE COURT:  With -- also an attorney, and James
21   Greenmun with Homeland Security?
22            AGENT GREENMUN:  Yes, Your Honor.
23            THE COURT:  And Nathan Smith, also with Homeland
24   Security.
25            Welcome to all of you.
</pre>

1          Mr. Leslie, the Court is charged today with

2   fashioning a sentence that is sufficient but not greater than

3   necessary to satisfy the statutory purposes of sentencing in

4   connection with your previously entered plea of guilty to

5   Counts One and Two of an indictment charging you with

6   production of child pornography, in violation of Title 18,

7   United States Code, Sections 2251(a) and 2251(e).

8          In that connection you should have received a

9   presentence investigation report.

10          Did you receive that report?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Did you have an opportunity to review it

13   with your attorney?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  And were all your questions about it

16   answered?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Very good.

19          Mr. Rosenblum, did the defense timely receive the

20   report?

21          MR. ROSENBLUM:  Yes, Your Honor.

22          THE COURT:  Did the government timely receive the

23   report?

24          MR. BROWN:  Yes, Your Honor, we did.

25          THE COURT:  There haven't been any objections or

1   exceptions filed in writing.

2           Does the government have any today as we speak?

3           MR. BROWN:  No, Your Honor.  However, I did speak to

4   the probation officer earlier --

5           THE COURT:  Yes.

6           MR. BROWN:  -- and there was a small factual change

7   that needed to be made.

8           THE COURT:  I think it was brought to my attention as

9   well.

10          On page 9?

11          MR. BROWN:  I believe that's correct, Your Honor.

12  Page . . .

13          THE COURT:  Page 9, paragraph 44?

14          MR. BROWN:  That is correct, Your Honor.

15          THE COURT:  Was it brought to Mr. Rosenblum's

16  attention?

17          MR. BROWN:  I'm not sure.

18      (Brief pause.)

19          MR. BROWN:  Mr. Rosenblum has been consulted and

20  notified, and I would just recommend that the Court consider

21  allowing the change in paragraph 44, page 9, striking the word,

22  on the last line there, "penis" and inserting the word "hand."

23          THE COURT:  That was my understanding of the

24  correction to be made, and without objection, it will be made

25  to the presentence investigation report.

1   Mr. Rosenblum, does the defendant have any objections

2   or exceptions it wishes to make today?

3   MR. ROSENBLUM:  No, Your Honor.

4   THE COURT:  Very good.

5   Mr. Leslie, I'm sure that Mr. Rosenblum has explained

6   to you that one of the obligations of the Court is to consider

7   the sentencing guidelines in fashioning a sentence for the

8   crimes you committed.

9   The guidelines are advisory.  They're not mandatory,

10  but the Court is required to consider them, and in that

11  connection, it is required to determine if they are accurately

12  calculated.

13  And that requires an examination of the facts of the

14  case and your criminal history.  The guideline uses both the

15  seriousness of offenses and the seriousness of criminal

16  histories to recommend punishment for similarly situated

17  defendants.

18  In other words, if there was a defendant in the state

19  of Oregon charged as you are charged, with a criminal history

20  similar to yours, then the guidelines are designed to help

21  courts treat those defendants similarly in terms of the length

22  and character of sentence that they are -- they're given so

23  that there isn't a significant disparity between how people

24  who've done similar criminal behavior with similar criminal

25  histories are treated.

1          In this instance the guidelines treat the base

2    offense, the production of child pornography, as a serious

3    offense in and of itself.  Without more, there are 32 levels of

4    punishment recommended, and that corresponds to a certain

5    length of time.

6          Without more, 32 levels results in a recommendation

7    of 121 to 151 months in prison in the 2016 guidelines.

8          All right.  Thank you.

9          And then in addition to that level, the offenses'

10   characteristics are examined a little more closely, and the

11   more harmful they become, generally, the more punishment is

12   associated with the guideline calculation.

13         And in this instance, with respect to Count One, the

14   offense involved a minor who had not attained the age of 12,

15   and specifically, in this instance, a two-year-old.  The

16   guidelines recommends that an additional 4 levels be added.

17         And then additionally, because there was sexual

18   contact between the minor in this instance, 2 additional levels

19   were added.

20         Because the production materials that were involved

21   in your crime included sadistic or masochistic conduct,

22   additional levels were also added under the guidelines, 4

23   additional levels.

24         And because the offense involved your supervisory

25   care or custody of a victim, additional -- you were babysitting

1    for some of the victims -- for this one victim in particular, 2

2    additional levels were added.  So if you do that math, it will

3    come to 44 points.

4           And essentially the same kind of calculation was done

5    for the second count.  Actually, it was slightly different.  It

6    included a 4-level increase in the base-level offense because

7    of the age of the child involved, and it also included sexual

8    conduct and, in that regard, an additional 2 points or 2 levels

9    were added.  And in this instance, again, because of your

10   supervisory control, an additional 2 points were added.

11          So that also resulted in a 44 -- actually, I may have

12   misstated.  Yeah, that resulted in less of a calculation

13   because one of the factors present in the first count was not

14   present in the second, so that there was an adjusted offense

15   level for that count of 40.

16          And because the counts were multiple, they were -- an

17   adjustment is added under the guidelines so that the greater of

18   the two levels is considered in the balance of the guidelines,

19   but there's an increase involved.  And there were 2 levels

20   appropriately added to the 44 so that the combined adjusted

21   offense level was 46.

22          There was a pattern of activity involved in your

23   conduct, and that is considered under the guidelines as well.

24   If you think of it, it has to do with the guidelines being

25   sensitive to the seriousness of the offenses generally, and a

1   pattern of offenses is more serious than a single offense or

2   the lack of a pattern.

3           In this instance the behavior did include a pattern,

4   so an additional 5 points was added.  That adjusted the level

5   to 51.

6           And because you accepted responsibility and actually

7   avoided the necessity of a trial, you get some credit for that.

8   Three points were deducted so that it turns out that the total

9   offense level that you receive is 43.  Forty-six less 3 is 43.

10          Using that data, along with your criminal history,

11  which was none whatsoever -- you have not been in trouble at

12  all except for this charge and one that is pending that doesn't

13  result in any increased points or levels being added under the

14  guideline.

15          But the Court is aware of a pending charge out of the

16  Middle District of Tennessee involving some similar allegations

17  at this point.  When you consider the guidelines calculation,

18  the recommendation results in a recommendation of life

19  imprisonment.

20          Because the statutory maximum that could be imposed

21  for these offenses is less than life imprisonment, that is, a

22  total of 60 years, the guidelines require that the Court

23  consider the statutory maximums so that the guidelines in this

24  case do result in a recommendation that you receive between --

25  that you receive 720 months incarceration, that the range of

supervised release recommended is five years to life per count.

You're not eligible for probation.  There is a 50,000 to $250,000 fine determined to be appropriate, and a special assessment of $200, as well as another assessment of $5,000 per count.

The Court will find that the guidelines are properly calculated, and its recommendations will be considered by the Court in fashioning a sentence.

So in addition to that consideration, the Court has received and considered the sentencing memorandum filed by your attorney that talks about your personal history in a little more detail than the -- and from a different perspective than the presentence investigation report, and also includes a number of letters from people that know you personally and have known you all of your life, probably most important from your mother and several other family, friends, and acquaintances. The Court has considered that as well.

It is your attorney's opportunity today to make an argument on your behalf, if he wishes to, and for you to additionally make an argument or a statement to the Court as to things you wish the Court to consider in fashioning a sentence, and that might include other witnesses and other documents as well.

And the government has an opportunity to do that, as well as offer testimony of victims or statements of victims and

1   other information that would be useful to the Court in

2   fashioning a sentence.

3          So having said that, Mr. Rosenblum, if you wish, you

4   are welcome to make an argument, present any testimony or

5   evidence that you would have the Court consider at this time.

6          MR. ROSENBLUM:  Thank you, Your Honor.

7          THE COURT:  You're welcome.

8          MR. ROSENBLUM:  Your Honor, the way I intend to

9   proceed is to make some statements on behalf of Mr. Leslie,

10  then I'm going to call his mother forward.  She would like to

11  address the Court.  And then I think Mr. Leslie himself would

12  like to address the Court.

13         THE COURT:  Very good.

14         MR. ROSENBLUM:  Your Honor, this is a tragic case for

15  all concerned.  It's tragic for the victims and their families,

16  who I believe are well represented in the courtroom.  It is

17  tragic for Mr. Leslie himself, and it's tragic for Mr. Leslie

18  and his family.

19         Mr. Leslie has a sickness, and that sickness is

20  called pedophilia.  That's the bad news.  The good news is that

21  he's crying out for help, and he is committed to change.

22         It's unfortunate that it took the event of his arrest

23  to bring it to the surface and bring it to light where he will

24  be forced now to get some help, but the fact of the matter is

25  that Mr. Leslie has wanted to get help for this sickness that

he knows that he has for a very long time.

Since he's been arrested, he has done everything in his power to try to right this wrong. Now, we all know that it can never be righted, but it does speak well of Mr. Leslie that he is trying to do what he can.

And you start off with the fact that he was extremely candid with me and with my staff when we first met him and were trying to figure out what the case was about.

I know the Court has probably prosecuted and, as a judge, has adjudicated many cases involving sexual offenses of this nature. And it was highly unusual that Mr. Leslie was as forthcoming with us when we first started out.

Then Mr. Brown reached out to me and said that this may be one of those rare cases where the government, in a child pornography/sexual exploitation/child production type of case, might be interested in actually meeting with Mr. Leslie in order to try to gain intelligence about what he did, how he did it, how others were doing it, and to just get an overall picture that would be of help to law enforcement in the fight against child pornography.

In that regard, Mr. Leslie provided a proffer to Mr. Brown, to Ms. Britsch, his counterpart from the Department of Justice who came into town specially for the proffer, and to these agents that are sitting in the courtroom, Agent Greenmun and Agent Smith. And as I recall, that proffer lasted the

1    better part of a day.

2         Mr. Leslie was extremely comprehensive.  He was

3    extremely candid, and I think that we were all struck with the

4    unusual candor that he displayed in terms of admitting what he

5    had done.  And throughout it all, it was clear that he wanted

6    to get help for his problem.

7         THE COURT:  Yeah.  Let me stop you for a moment

8    because I -- you brought to mind something that I didn't

9    mention that I did consider which was Mr. Leslie's letter to

10   the Court, among the other letters that the Court received.

11        And what triggered my memory about it was what you've

12   described the proffer involved, was his candor and openness in

13   discussing his crime.

14        MR. ROSENBLUM:  Yeah.

15        THE COURT:  So I want the record to reflect that the

16   Court's taken particular note of that as well.

17        MR. ROSENBLUM:  Yes.  I'm glad that you brought that

18   up, Your Honor, because that was another indication of

19   Mr. Leslie's candor, the letter that he wrote to the Court.

20        I know the Court has read a lot of letters from a lot

21   of offenders who are about to be sentenced, and I hope the

22   Court will agree that Mr. Leslie's letter was especially

23   truthful in terms of what he had done, how he feels about

24   himself, and what his intentions are for the future.

25        There was also the psychological evaluation with

1    Dr. Cohen, and in his meeting with Dr. Cohen, he didn't pull

2    any punches at all.  He was extremely truthful with Dr. Cohen.

3    And it helped, I think, in terms of allowing Dr. Cohen to

4    formulate a report that will hopefully be helpful to the Court

5    in terms of fashioning a sentence.

6         I mentioned the proffer that Mr. Leslie provided, and

7    the fact of the matter is that the cooperation, as Mr. Brown, I

8    expect, will tell you, or Ms. Britsch, whichever one, will tell

9    you, did not rise to the level, as far as the government is

10   concerned, of substantial assistance that would lend itself to

11   a traditional 5K1.1 motion.

12        But in terms of the 3553 factors, I think that the

13   proffer and the information Mr. Leslie gave was extremely

14   valuable to law enforcement.

15        And it did not stop with just the one-day proffer

16   that we all attended.  Mr. Leslie, on a number of occasions,

17   either met with or, through phone calls or other

18   communication -- sometimes I was the middleman -- would provide

19   information to the government agents as they continued

20   investigating the crime.

21        I mentioned Dr. Cohen's report, and I just wanted to

22   quote very briefly from the report.  On page 4 Dr. Cohen said,

23   "He was not overly guarded and did not appear to dodge any

24   questions or topics.  In fact, he was extremely candid and

25   forthcoming about his previous behaviors and sexual acts.

1    Mr. Leslie stated, 'I am actually really happy to tell you all

2    of this and get it off my chest.  I want to know why I did what

3    I did.'"

4            And I would submit to the Court that while we all

5    understand that there's going to be a significant punishment

6    imposed here, Mr. Leslie's attitude -- and I believe that it's

7    truthful.  I don't think that he's just making this up as he

8    goes along in order to please the Court and get a lesser

9    sentence.  It bodes well for the future because it shows that

10   Mr. Leslie has insight into the fact that he does have a

11   sickness, and he genuinely wants to get help for it.

12           The Court mentioned the letters that you received

13   from family and friends, and those letters show a totally

14   different side of Mr. Leslie.  There really is goodness in him,

15   and there really is a lot to be admired about Mr. Leslie.

16           And he has a good heart, and he really has tried to

17   help people.  And he is going to try to help himself beat this

18   demon that lives inside of him.

19           One of the things that we provided to the Court was

20   the article from *Psychology Today*, and I think that report

21   gives terrific insight into --

22           THE COURT:  And let me say, because I did not mention

23   the attachments to your memo that included both Dr. Cohen's and

24   the letters -- I did mention the letters.

25           I did read the article, and I did read Dr. Cohen's

1   report, with much interest, by the way, so thank you for

2   sharing both of those with the Court.

3          MR. ROSENBLUM:  And I think that the article from

4   *Psychology Today* really is helpful to all of us that deal with

5   these cases, at whatever level we deal with them, to understand

6   what someone who has this sickness goes through in terms of the

7   frustrations about getting help.

8          Just to quote briefly from the article, and it is on

9   page -- it's actually page 86 of the article, page 3, I think,

10  of the attachment.  It says, "The dense mass of stigma

11  surrounding sexual abuse not only deflects compassion for

12  potential abusers, but it erects particular barriers that

13  prevent them from getting help.  Dr. Levenson surveyed

14  convicted offenders about these barriers, and the first thing

15  they say is that they really had no idea where to go.

16         "They see all these public health announcements:  'If

17  you have a drug problem, or a gambling problem, or you think

18  you have HIV, call this number.'  But you never see a bus go by

19  with an ad that says:  'If you're concerned about your

20  attractions to children, call this number.'  Another reason is

21  the very shame and fear of judgment -- 'If I open up and tell

22  somebody, what are they going to think of me?'"

23         So there are people that have this sickness, and,

24  again, not to beat a dead horse here, but I think that

25  Mr. Leslie is prepared to dedicate the rest of his life not

1 only to try to better himself and make sure that he never

2 reoffends but also to help other people who suffer from

3 pedophilia.

4       There are resources available.  When he goes to

5 prison, Mr. Leslie will have the opportunity to take advantage

6 of sex offender treatment, which we would recommend be as

7 intensive as possible, and that's what Mr. Leslie wants, and

8 whatever counseling is available to him.

9       And on the day that he gets out of prison, he would

10 like to continue with those programs.  He wants to do whatever

11 he can to right this wrong.

12       It occurs to me that if ever there comes a time --

13 and Ms. Britsch from the Department of Justice may have a

14 better handle on this, or the agents for Homeland Security, or

15 perhaps Mr. Brown, but if ever there came a time where there

16 was a study that was made of people who are admitted --

17 admittedly suffering from pedophilia and they are looking for

18 volunteers to participate in that study in order to try to

19 eradicate this problem and this sickness, Mr. Leslie would be

20 the first volunteer.

21       The Court noted the Tennessee case, and it's no

22 secret to the Court, I'm sure, that when we get done here,

23 Mr. Leslie will face some very serious charges in Tennessee.

24       And the fact of the matter is that I think that the

25 charges in Tennessee are related to the charges in this case.

1   My understanding is that this is the discrete production

2   charges, whereas the case in Tennessee is a more wide-ranging

3   enterprise charge.  But Mr. Leslie will not be done when he

4   gets done with the Middle District of Florida.  He'll still

5   have to face another serious charge.

6         Your Honor, I know that what I have said, what Sharon

7   Leslie, his mom, is going to say, what Mr. Leslie says cannot

8   change what has happened.  And let me say this.  I know the

9   Court is about to hear a dramatic and heartbreaking rendition

10  from the prosecution.

11        I expect the prosecution may call forward families of

12  victims of Mr. Leslie, and we realize that that will certainly

13  affect the judgment of the Court.

14        But on -- on behalf of Mr. Leslie and his family, the

15  only thing that we can ask the Court to do is to impose a

16  sentence that will allow Mr. Leslie to see the light at the end

17  of the tunnel.

18        THE COURT:  All right.  Thank you very much,

19  Mr. Rosenblum.

20        MR. ROSENBLUM:  Your Honor, if I could call Sharon

21  Leslie forward.  I think she wanted to address the Court.

22        THE COURT:  Sharon Leslie.

23        MR. ROSENBLUM:  Ms. Leslie, would you tell Judge

24  Davis who you are, how you're related to Andrew, and what you

25  would like to say to the judge about your son.

1    Tell the judge a little bit about yourself in terms

2    of what you do for a living as well.

3         MS. LESLIE:  I work for the post office.  Andrew is

4    my youngest son.  I would like to read a short statement on his

5    behalf.

6         I want you to know that it haunts me about everything

7    that he has done and everything that these children have gone

8    through.  And I hope and pray that you will see in your heart

9    to get him the treatment that he most desperately needs,

10   that -- there are so many things that could have happened that

11   I know now that I've missed something in his life that I did

12   not catch and did not help him with.

13        And I know that only with help, treatment, love, and

14   forgiveness will he ever be able to return.  I know that he has

15   to face his punishment, and I want the Court to know that I

16   will be here to help him in any way that he needs or the Court

17   needs for me to be here to help him face his punishment and

18   help the treatment that he needs.

19        I know there's no way I can ever make it up to

20   families or the children or even my family for the things he

21   has done, and I know it's going to be hard for him to make it

22   up to any of them.  But I pray that you will give him the

23   chance to do that.

24        Thank you.

25        THE COURT:  Thank you, ma'am.

1          MR. ROSENBLUM:  Thank you.

2          Your Honor, I think Mr. Leslie wanted to address the

3    Court.

4          Does the Court want him to talk now or after the

5    prosecution gets done with its presentation?

6          THE COURT:  He can speak now if he likes.

7          THE DEFENDANT:  First of all, I would like to

8    apologize to my victims and their families.  I never meant to

9    harm them, and I hate myself for the things that I've done.

10          I'm sorry for taking advantage of their trust and

11    their children.  I understand that they may never forgive me,

12    and honestly, I don't expect them to.  I wouldn't if I was in

13    their shoes.

14          For the future it is my hope to get a degree in

15    psychology and to start an organization for those attracted to

16    children.  My organization would help them deal with their

17    problems and their urges safely and with no harm to others.

18          While being in jail I learned that there are

19    treatment programs for this.  I wish I would have known that

20    before.  But I will make it more -- I will make this more known

21    to others and to offer it before they offend.

22          As for my sentencing, I deserve 60 years and more,

23    but please, Your Honor, allow me to spend time with my mother

24    before she passes.  As well, allow me the time to start a new

25    career if I'm allowed to use computers or the time to relearn

1    if I'm not.

2         I understand -- or I will be happy to accept any

3    extra conditions, including castration, even though I still

4    want to have children myself.

5         I understand this is quite a bit to ask considering

6    the offenses, but please, if not for me, for my mom.  This has

7    been harder on her than me.

8              THE COURT:  All right.  Thank you, Mr. Leslie.

9              MR. ROSENBLUM:  That's all we have, Your Honor.

10             THE COURT:  Thank you, Mr. Rosenblum.

11             Mr. Brown?

12             MR. BROWN:  May it please the Court.

13             On behalf of my co-counsel, Lauren Britsch, and the

14   HSI agents who are not only here at counsel table as case

15   agents but also here in the courtroom, I echo Mr. Rosenblum's

16   statement that this is a very, very serious case, and there are

17   no winners in the courtroom.  In fact, in a way we're all

18   losers.

19             And the reason why we're here is because of choices

20   that this defendant made.  And I understand, to some extent --

21   although I'm not an expert, I understand pedophilia.  I

22   understand the points made in the article.  I understand the

23   compulsions that some offenders like Mr. Leslie feel.

24             But while one could legitimately talk about how a

25   defendant, quote, suffers from pedophilia, what I would like to

point out is the other side of the coin and point out how victims suffer from pedophilia, that is, the victims that are assaulted and molested as a result of individuals who are pedophiles, as this defendant is.

A little bit of background, Your Honor. This case is well advised by the presentence investigative report, but this case -- the investigation has been going on for a number of months and a few years into a website on the dark web, which I won't name here in court.

I know this Court is familiar, at least in general, with how the dark web works, but as the Court knows, the dark web is a place where individuals can go for anonymity.

And that anonymity can be good if you are a political dissident in Iran or North Korea, but that anonymity can be used for bad if you are a drug dealer or a person who does identity theft or a person who steals credit cards or a person who molests children and trades in child pornography.

So this -- this website was established on the Tor network, which is The Onion Router Network, at a particular -- and it was difficult to get to unless you knew how to get to it by probably word of mouth from another pedophile.

Members of this would create posts that other members could comment on, and the typical nature of the posts contained a preview of an image, a link to a password, and perhaps a password to open certain password-protected archives.

1    Now, it's important to note that when a person, a

2  guest, came on to this, that their status was elevated to

3  registered, quote, acting -- or awaiting activation, not

4  member.

5    To become a member, an administrator of the website

6  or the server would have to approve that member, and the only

7  way to apply for full membership was by creating a post

8  containing child pornography.

9    And so this had to be not just child pornography that

10  had been around out on the Internet for years, which is

11  horrible in and of itself.  But usually what was required was

12  production of new material, that is, things that had not been

13  seen before.

14    And the way to produce that type of material is to

15  molest the children and then produce it yourself.  And I would

16  submit to you that that's what Mr. Leslie, and others, did to

17  gain access to that server and that website.

18    And guests are able to navigate to various postings.

19  They're able to get to chat functions.  In fact, there's a

20  real-time textual chat function feature that any user,

21  including nonregistered guests, could get on and communicate

22  and share links containing child pornography.

23    And so there was essentially the ability to have a

24  chat log wherein Mr. Leslie was able to speak to other members

25  about child pornography and share and exchange child

1  pornography as well.

2          In the meantime, HSI had another investigation into a

3  particular website that Mr. Leslie was running himself.  And at

4  the time that they got on to that website, they were able to

5  get some electronic surveillance authority from the Court here

6  in this building to do pen registers, but at that very time,

7  that website was taken down by Mr. Leslie.

8          And he explained the reasons why he did that in the

9  proffer.  But in any event, it was taken down.  And so there

10 was not a lot of information that was gathered during about a

11 five- to six-month period.

12         The break came when three individuals were arrested.

13 And the presentence investigative report does a good job of

14 pointing this out on page 5 and 6.

15         In October of 2016, HSI agents were able to, with law

16 enforcement partners, arrest three individuals who were

17 involved in child pornography offenses, including two that came

18 into the Eastern District of Virginia to meet and molest a

19 child.

20         They were arrested, and one of those -- at least one

21 of those individuals was interviewed and talked about a

22 face-to-face meeting with an individual that he referred to as

23 having met on the website that I mentioned before, on Tor,

24 called, quote, TheAwesomeOne.  That is Andrew Leslie.  That is

25 the username that Mr. Leslie named himself.

1    And during that interview, this individual was able

2 to tell law enforcement about meeting with Mr. Leslie in

3 Tennessee and about how Mr. Leslie was able to meet with that

4 individual and then they were able to share child pornography

5 that Mr. Leslie had produced.  And they got together, and they

6 viewed that in a hotel room and gratified themselves.

7    And one of those video files shows Mr. Leslie engaged

8 in anal intercourse with an infant.  And so Mr. Leslie had told

9 that individual about access that he had to children through

10 babysitting down in Florida.

11    Using that information and a forensic review of

12 certain material, HSI was able to get enough information to not

13 only find Mr. Leslie, through various sources, but also to

14 establish probable cause to get a search warrant for his

15 residence, and they executed that warrant on October 18 of

16 2016.

17    And what happened on that day -- and some of the

18 agents -- not only the agents who are at counsel table but

19 there are other agents in the courtroom who were there.  What

20 they found was Mr. Leslie essentially in bed with a

21 two-year-old child.

22    And Mr. Leslie was cooperative.  That female child

23 was referred to by Mr. Leslie as a toddler.  And I should say

24 they didn't actually pull him out of bed.  He referred to

25 himself as "just been in bed with the toddler."

1        And so they executed the search warrant.  Mr. Leslie

2   chose not to speak with them at that time.  And they executed

3   the search warrant and got a number of electronic and computer

4   digital devices from his residence, which the Court can see

5   listed out but have now been administratively forfeited.  That

6   was done by consent.  And so jumping ahead to the end, there's

7   no need for the Court to do an order of forfeiture in this

8   case.

9        Mr. Leslie, I would submit, when he produced child

10  pornography, he would then upload it to these various websites.

11  But in this particular case, Mr. Leslie had not had the time to

12  do that because there was a camera which was on his bedside

13  table.  And that camera, when it was examined by law

14  enforcement, it was found to contain child pornography,

15  including the two victims that are set forth in the charged

16  offenses in this case, the counts of conviction.

17       One was a two-and-a-half-year-old child, and the

18  other was approximately a six-month-old infant.  And there were

19  other images and videos that were recovered from his

20  collection, if you will.

21       Specifically, the presentence investigative report

22  correctly recounts that there were approximately 33,000 images

23  of both -- images and videos of child pornography.

24       And as the Court knows that some of the family

25  members are -- of the victims are in court at this time, and

1   I'm going to be a little specific in one of my descriptions to

2   the Court.  And I'd like to offer those family members the

3   opportunity to leave the courtroom if they don't wish to hear

4   this description.

5           And I'll offer them that opportunity now.

6           They want to stay, Your Honor.

7           THE COURT:  That's fine.

8           MR. BROWN:  One of the videos, Your Honor, that we

9   reviewed depicted Mr. Leslie straddling an infant child and

10  forcing his penis into that child's mouth.

11          Another showed, as I've mentioned before, the

12  defendant engaged in anal intercourse with a very, very young

13  child.

14          And essentially we were able to identify, through

15  capturing -- through that process, we were able to identify

16  approximately four -- well, not approximately.  Four children

17  were able to be identified, two of whom their family members

18  are present in court, and I think the Court may hear from some

19  of them later.

20          And so one of the things that's important is for --

21  in this type of case is that the Court know the nature of the

22  offense.  That is, that's one of the 3553(a) factors.  And

23  while not being gratuitous, I wanted the Court to know that

24  that is the type of material that we're talking about.

25          You know, oftentimes people think of child

pornography as, you know, 15- and 16-year-old girls topless on some French beach somewhere. That's not what this defendant was doing. That's not what this defendant liked.

And, of course, the Court is well aided by his statement and the psychological report and the extraordinary candor that the defendant has given. But candor and truthfulness only go so far. There has to be punishment, and there has to be consequences, and there has to be -- equally as important, there has to be justice for victims.

And so that's part of what the United States is seeking here today, justice for the victims. And that includes just punishment and the other factors that are set forth in 3553(a).

As I mentioned, the agents were able to recover chat logs from the defendant's computer, and one of the chat logs I brought to court. And I'm going to call this, with the Court's permission, and I'll offer it as Government's Exhibit No. 1.

And may I approach, Your Honor?

THE COURT: You may.

Thank you.

MR. BROWN: Your Honor, this was a chat log that was obtained from some of the computer media that was obtained from the forensic examiner, who is here at counsel table, James Greenmun.

And it is a document that is approximately 47 pages

1   in length.  And I'm not going to go through all of it, but I

2   wanted to highlight a few of the lines there.

3           What this is, this is a discussion between

4   TheAwesomeOne and an individual known as crazymonk, who was one

5   of the individuals who was arrested in Virginia who has now

6   pled guilty and who -- I'll talk about his sentence in just a

7   moment.

8           But what this shows is that on the dark web,

9   Mr. Leslie and this other purveyor of child pornography were

10  having discussions and trading child pornography in real time.

11          So this chat log shows -- and, again, the defendant

12  is TheAwesomeOne, and I would point out that the defendant not

13  only referred to himself as TheAwesomeOne, but he referred to

14  some of the victims with the "awesome" moniker as well,

15  including TheAwesomeTot and TheAwesomeBaby.

16          On page 1 of -- well, let me first move to introduce

17  Government's Exhibit No. 1.

18          MR. ROSENBLUM:  No objection.

19          THE COURT:  It will be marked and admitted.

20      (Government's Exhibit 1 was received in evidence.)

21          MR. BROWN:  And may I also -- my colleague reminds me

22  to ask the Court to place Government's Exhibit No. 1 under

23  seal, and I would so move that, Your Honor.

24          THE COURT:  Government's No. 1 under seal without

25  objection?

1          MR. ROSENBLUM:  Yes.

2          THE COURT:  It will be marked and admitted.

3          MR. BROWN:  Your Honor, on page 1, line 24 there,

4    crazymonk says, "Downloading CP is always a great option, and

5    don't share these."

6          And Mr. Leslie responds, "Which one is this?"

7          And then crazymonk describes exactly what is being

8    depicted there, and I'll let the Court read that.

9          THE COURT:  Let me address your request that the

10   Court look at a video that's under seal.

11         Is that what you just did?

12         MR. BROWN:  No, Your Honor.  No, Your Honor.  I'm

13   simply -- I'm asking if the Court will seal this chat log.

14   We're not offering any videos.

15         THE COURT:  Oh, so your request was that I seal this

16   chat log.

17         MR. BROWN:  Yes, Your Honor.

18         THE COURT:  Okay.  I misunderstood you.

19         MR. BROWN:  Yes.

20         THE COURT:  I thought you asked me to watch

21   something.

22         MR. BROWN:  No, Your Honor.

23         THE COURT:  Okay.

24         MR. BROWN:  No, Your Honor.  What I'm asking you to

25   do is just follow along as I point out a few lines of text.

1          THE COURT:  I'll be glad to.

2          MR. BROWN:  Thank you.

3          I'd be happy to -- if the Court wanted to know more

4    about the material, I can describe it to you.

5          THE COURT:  No.  Had you asked me to watch something

6    that's in evidence, I was going to give you the opportunity to

7    provide a visual -- I mean, a verbal description of it in lieu

8    of me watching it because I'm not going to.

9          MR. BROWN:  I understand, Your Honor.

10         THE COURT:  Okay.

11         MR. BROWN:  And I anticipated that, and that's why I

12   described them in detail and offered the family the opportunity

13   to leave.

14         THE COURT:  All right.  Thank you.

15         MR. BROWN:  On line 43 of page 1, Mr. Leslie says,

16   about one of the persons -- or one of the children depicted in

17   the videos, quote, "She's less than a week old, and her mom

18   told me I can steal her whenever I want."

19         This is a person that he was referring to hopefully

20   having some future activity with.

21         Page 2 of Government's Exhibit No. 1, line 51.  I'll

22   let the Court read that.  That is spoken by TheAwesomeOne,

23   i.e., Mr. Leslie, and it gives his intentions of what he was

24   going to do into the future -- in the future.

25         Moving over to page 4, line 167, Mr. Leslie stated,

quote, "I need to figure out how to use Kik over Tor," and then he was -- which is -- Kik is a communication -- online communication service. Tor is the -- essentially the dark web.

And then he says, quote, "There are a few groups there for sharing porn."

Next, page 5. And crazymonk says, quote -- there on line 211, quote, "Was oddly nice to see each other getting off to little babies and toddlers."

And then Mr. Leslie responds, "Nice, ha ha." And then he goes on, at line 217, quote, "Once I remove the Exif, I have pictures for you."

Next line, "But I have a video I need you to edit," closed quote.

What he refers to there is removing the Exif data or the embedded data from the images so that it can't be traced back to him in -- and his devices.

Later on that page, 261 and 263, he says, quote, "The pics really don't need editing. I need the video edited. Otherwise it would point back to Sweet Baby October."

Sweet Baby October is a child pornography series that he created with one of the victims in this case.

Page 6, line 276, Mr. Leslie states there -- and I'll let the Court read that.

And then later on -- at line 334 on page 6, crazymonk says, quote, "Is that the only one you're babysitting alone?"

1          Mr. Leslie says, "Yes."

2          And then crazymonk, on 345, gives his opinion about

3    how fortunate Mr. Leslie, that is, TheAwesomeOne, is to be

4    alone with that child.

5          And the last one I'll point out is on page 7, line

6    431.  Mr. Leslie says, quote, "Everyone doesn't believe when

7    people call me a pedo."

8          And then crazymonk responds, "And here you are" --

9    and you can see that line there.

10         And Mr. Leslie responds, "New baby at one month."

11         And so the reason why we introduced the chat logs is,

12   I mean, there's no question that it appears that the defendant

13   has shown remorse after being arrested.  There's no question

14   that he has been candid with not only law enforcement and

15   apparently also his psychologist and his lawyer and maybe even

16   his family, and that's all good.

17         But that's only part of it, because what's also

18   important to see is, what did Mr. Leslie say when he thought

19   nobody was looking?  What did Mr. Leslie say when he was online

20   with other pedophiles who were looking to victimize children

21   and to use that as essentially currency to gain access to these

22   websites and membership in these websites?

23         It is true that Mr. Leslie made efforts at

24   cooperation.  There's no question about it.  It is true that

25   the agents and the lawyers spent roughly five or six hours with

1　him, the better part of a day.  It is true he appeared to be

2　candid and truthful.  No question about that.

3　　　　　It is true that he subsequently contacted law

4　enforcement with efforts to provide additional information or

5　additional passwords.

6　　　　　What the defendant did was provide passwords to his

7　encrypted media, even though he knew that whatever was found

8　could be held against him.  But he did that.  That is laudable,

9　no question about it.  That is cooperative.  There's no

10　question about it.

11　　　　　But it did not result -- while it was valuable, and

12　Mr. Rosenblum is absolutely correct, it did not result in the

13　arrest of other individuals.  It did not further the

14　prosecution.  Mr. Leslie was one of the last involved, and so

15　he was in the unenviable position, which sometimes the Court

16　may have seen in drug cases, of having to be one of the last

17　ones in.

18　　　　　And so despite his efforts, which are laudable, it

19　didn't result in 5K consideration under our policy.  But, as I

20　told Mr. Rosenblum and as Mr. Rosenblum told the Court, that

21　is -- certainly should be considered by this Court.

22　　　　　But only when weighed against the magnitude of the

23　harm to the victims and their family, which substantially, in

24　our position, outweighs the efforts at cooperation, even though

25　they were full -- they were fully attempted by the defendant.

1      The psych report that was contained in the --

2  attached to the sentencing memorandum, the Court knows that

3  oftentimes the United States will object to the admission of

4  reports.

5      We didn't object to the admission of the report this

6  time for several reasons, not the least of which it contained

7  inculpatory statements which -- which, like under the evidence

8  code, when someone says something that inculpates them, it's

9  presumed to be truthful, which is why hearsay on that ground is

10 admissible.  So there doesn't appear to be a lot exculpatory in

11 it, and so therefore, that's one of the reasons why we didn't

12 object.

13     And so one assumes that when a defendant admits to

14 committing crimes, that he's telling the truth.  And so I would

15 point out, on page 3 of that report, which is attached to the

16 memorandum, it talks in detail -- it indicates, quote, "He

17 freely admits to inappropriate sexual contact with underage

18 children.

19     "He reported that he had made ten pornography videos

20 and took at least 150 pictures.  He reported having at least

21 one gig worth of child porn stored on his personal equipment.

22 He stated that he felt bad about engaging in sex acts with

23 children less than five years old but felt less bad" -- that's

24 in quotes -- "about children age ten and up since he believed

25 it was more consensual.

"Initially he became interested in children age six to ten, but then, as he desensitized to the content, his age interest widened to children age zero to 12."

Zero to 12. And, I might add, it goes on to talk about the following victims that he reported, and there were ten victims that he self-reported there, including the four that we knew about prior to his arrest.

One of those victims -- it is the Sweet Baby October series -- has now become a popular series on the Internet with other pedophiles.

Mr. Leslie is smart. He has great expertise in computers. He was able to do fantastic things with encryption, do fantastic things with servers. He knew his way around, and even he -- in his mitigation speech, he indicated hopefully being able to get back involved in computers someday.

On page 4 of that report, reading from the part that Mr. Rosenblum -- picking up from where Mr. Rosenblum left off, it says, quote, "Mr. Leslie reported that he was most interested in knowing how he was caught." Most interested in knowing how he was caught.

"He believes that his making of his website and then attempts to make a 'porn stars listing index' to help others find the child porn star they wanted may have been the final straw. He stated, 'The thing I am most sad about is hurting the kids. I never meant to hurt them, and I'm also sad about

1   being stuck in jail forever.'

2          "He only verbalized his understanding that harm to

3   the children was from a physical standpoint and not from an

4   emotional or psychological standpoint."

5          That statement strikes me as a bit tone-deaf because

6   it ignores the psychological and emotional trauma that the

7   victims' families must feel for having been violated -- their

8   trust been violated and their children, the most valuable

9   members of their families, being violated as well.

10         The other thing that struck the United States, both

11  counsel, about this report was that nowhere -- and if I did

12  miss it, I'm sure Mr. Rosenblum will point it out to me, but

13  nowhere does it talk about recidivism.

14         Usually, in psychological reports in child

15  pornography cases -- and this Court has seen them -- the expert

16  will talk about risk of recidivism.  And usually -- because

17  it's something that is being presented as a mitigation, usually

18  it points out low risk of recidivism.  This report is silent on

19  recidivism.

20         On page 7 it points out that, quote, the bottom

21  paragraph, "Mr. Leslie, based on all evidence recovered from

22  his possession, his verbalized strong sexual interest in only

23  prepubescent children" -- I'll repeat that -- "his verbalized

24  strong sexual interest in only prepubescent children, his

25  engagement in sexual relations with minors, his creation and

1 distributed child pornography, and repeated patterns of

2 behavior, a paraphilic diagnosis of pedophilia is rendered."

3       So there's no question this is not a case where

4 anybody doubts that we're dealing with a pedophile.  And so I

5 would submit to you that because there's no reference to low

6 risk of recidivism, that I would imagine a person with this

7 type of deep-seated -- Mr. Rosenblum calls it sickness.  I call

8 it a condition.  I also call it criminal conduct -- that I

9 would submit because it's so deep-seated, this defendant can

10 never be trusted around children again, ever, and should never

11 be trusted around children again.

12       And the United States submits and hopes that the

13 Court's sentence will recognize and affirm that principle.

14       I also add, Your Honor, that there were a number of

15 restitution claims that were made in the case, not by anyone

16 who's in the courtroom today, but there were a number of

17 restitution claims that were made based upon items that were in

18 Mr. Leslie's collection, that is, the 33,000 images and videos.

19 And they're listed in the presentence investigative report.

20       I have personally spoken with the lawyers that

21 represent the victims in each of those series, and I told

22 Mr. Rosenblum this as well, that they each, in light of the

23 fact that this is a hands-on offender who has produced child

24 pornography, both lawyers who represent those six or seven

25 different victims, series of victims, have withdrawn their

```
 1  restitution claims, and that part of the case needs no further
 2  action by the Court.
 3          Your Honor, I wanted to recognize anyone in the
 4  victim -- the child victims' families who would like to be
 5  heard at this time.  I know there are families from two
 6  different victims who are here, and with the Court's
 7  permission, I'll invite them up, if they wish to come.
 8          THE COURT:  You may.
 9          MR. BROWN:  May I have just a moment to confer?
10          THE COURT:  You may.
11          Good afternoon, ma'am.
12          MR. BROWN:  Your Honor, with the Court's permission,
13  may I stand next to her?
14          THE COURT:  You may.
15          Will you please introduce yourself to the Court,
16  please.
17          MS. SAYLES:  My name is Tracey Lindy Sayles.  I'm his
18  aunt.
19          THE COURT:  Welcome.
20          MS. SAYLES:  It's hard for me to stand here.  Of
21  course, I'm sure everybody realizes that.  I've know him since
22  he was born.  He was always a sweet child, a little different,
23  but everybody is a little different.  Everybody has their own
24  peculiars and personality traits.
25          He was especially close with my youngest daughter.
```

They were closer in age. Our parents -- my parents would take the two -- she would take two grandchildren at a time during the summer months, you know, and they were the two that wanted to go together. They were close.

He was a sweet child. He could -- he was an intelligent child. But as he got older, some peculiars, you know, became more pronounced, but nothing that you'd -- you know, "That's just Andrew. That's just the way he is," you know. No more different than you like chocolate ice cream and he likes vanilla, you know. Just their personalities. If the whole world was the same, what a boring place it would be.

But as you -- but now come to light with all this, I would say he's a chameleon. His personality fit whatever situation or people he was with.

It's hard for me and for my family to believe what he has done. However, there's no disputing it. The evidence is there.

My concern is for the victims. It's no longer -- he's no longer my concern. I have no concern for him whatsoever. I'm sorry for his mother and all that she's going through, and I love her. She's my sister, but I'm not concerned for him.

And if he wants to further his education on the government's dime, I consider that totally reprehensible. We have suffered enough. These children have suffered and will

1 continue to suffer.

2       And we have no idea at what time that these

3 children -- that they -- you know, that this will hit them

4 psychologically.  We have no idea the damage that he has done.

5 And for him to benefit in any way is unconscionable.

6       Thank you.

7       THE COURT:  Thank you, ma'am.

8       Good afternoon.

9       MR. BAKER:  Good afternoon.

10       THE COURT:  Introduce yourself to the Court, please.

11       MR. BAKER:  My name's Darren Baker.

12       THE COURT:  Yes, sir.

13       MR. BAKER:  I met Andrew -- it was May of 2016.  He

14 went to school with my wife, and they'd known each other for a

15 long time.  And it took me a little while to trust him, to feel

16 him out.  And right about the time I felt I could trust him, I

17 found out about this.

18       I've fought feelings of sadness, anger, hate toward

19 this man since, and I ask Your Honor that leniency not be

20 applied here.

21       I pray one day that I can forgive him, for my sake.

22       That's all.

23       THE COURT:  Thank you, sir.

24       MR. BROWN:  As I indicated, Your Honor, both of those

25 were family members of the four victims, one of whom is

1    pictured -- or that are parts of the counts of conviction.

2          I told you that I would provide the sentence for

3    crazymonk, also known as Patrick Falte.  He was --

4          THE COURT:  Mr. Brown.  Mr. Brown, keep your voice up

5    just a little bit.

6          MR. BROWN:  I'm sorry, Your Honor.  May I have just a

7    moment?

8          THE COURT:  You may.

9          MR. BROWN:  Mr. Falte, who was one of the cooperators

10   that led us to Mr. Leslie, received a life sentence.  The

11   United States had recommended, based upon cooperation, a

12   50-year sentence.

13         The -- in closing, it is difficult to imagine or to

14   fathom the horror that this defendant wrought on his victims

15   and their families.  It's just hard to imagine.

16         The United States asks this Court to impose a very

17   lengthy sentence to provide not only for just punishment but

18   also to protection -- for protection of children.

19         It's our position that the only way of stopping him

20   is to keep him either behind bars or to keep him on strict

21   supervision.

22         The United States is mindful of the attempts at

23   cooperation, and while we declined to make any formal motion

24   for downward departure, it is our position that the Court can

25   consider that, for whatever it's worth.  But under no

1  circumstance would we ever urge or expect the Court to sentence

2  the defendant in this case to less than 50 years.

3         With regard to supervision, I will -- the Court

4  already knows, probably, what I'm going to say but it should be

5  life, whatever period of life remains for him.  He should never

6  be allowed to be around children again.

7         May I confer just a moment, Your Honor?

8         Thank you, Your Honor.

9         THE COURT:  Thank you.

10         Mr. Brown, is there any legal reason why sentence

11  should not now be pronounced?

12         MR. BROWN:  There's no legal bar to sentencing, Your

13  Honor.

14         THE COURT:  Mr. Rosenblum?

15         MR. ROSENBLUM:  No, Your Honor.

16         THE COURT:  I don't recall having a case in which the

17  horror associated with the crime committed and the harm done is

18  as palpable as it is in this case and is acknowledged by

19  everybody, including the defendant.

20         And that really does speak to the seriousness of the

21  offense -- offenses that were committed.  They are

22  reprehensible, unimaginable, unbearable.  Descriptions that can

23  be used to describe the horror fail to capture it.

24         And I don't think there's anyone in this courtroom or

25  in the community that would disagree, at least not anyone who

has not suffered from -- perhaps those that suffer from a

psychiatric illness that this has to be a manifestation of or

the condition, as you describe it, or perhaps the criminal

conduct, as you describe it, Mr. Brown.  Only those who embrace

that thinking might be unaffected by the horror.

So it -- the need to prevent it is clear to the

Court, and I -- and the necessity of the prevention being

complete is clear.

That's not the only thing that the Court has to

consider.  I'm required to consider whether there are any --

whether there's anything that appropriately should suggest a

tempering, if you will, of the completeness of the punishment

as it relates to the seriousness of the offense.

And I'll tell you, one thing that's been offered,

which is Mr. Leslie's willingness to acknowledge his

proclivities and to suggest that he could not do anything about

them -- despite the psychologist's argument, Mr. Rosenblum, I

don't believe it.

Anyone who is sophisticated enough to hide this

conduct in the ways that your client hid this conduct is smart

enough, resourceful enough to find help if he truly wanted it.

And had he found help, we wouldn't be here.

I hear family members expressing rage, and I hear

family members expressing regret, and I hear the possibility of

some guilt being associated with not detecting, not preventing,

1  not protecting.  That's misplaced guilt.

2          There is not a way, I don't think, for a mother or

3  aunt to have reasonably identified the extent of this

4  difficulty we're faced with, and you shouldn't beat yourselves

5  up about it.  It's regrettable.  It happened.  It's not your

6  fault.  You need to move on and give attention to your

7  children.

8          The defendant's mother as well.  I understand, as a

9  mother, your need to, as all mothers would, I think, continue

10 to try to assist their children.  I understand a need of the

11 victims' parents to try to assist them, and if you want to

12 expend energy in this matter, do it in that regard, by trying

13 to continue to help your children.

14         And one thing that I -- the sentence that I fashion

15 is going to be a little unusual in one regard, because

16 Mr. Leslie's willingness to cooperate in trying to prevent this

17 horrible crime is unusual, and I think he's uniquely situated

18 to do that.  So I'm going to permit him, under the supervision

19 of the Bureau of Prisons and its psychiatric staff, to make the

20 effort that he wants to make.

21         If he is sincere about trying to make a difference in

22 this horrible arena that we find ourselves in as a community,

23 as a society, I'm going to give him the opportunity to do that,

24 if the Bureau of Prisons can manage it.  I think it's laudable

25 and would be helpful.

1     So to the extent that you, Mr. Leslie, need to leave

2  here having some sense of self that is not as you described it,

3  monstrous, there's an opportunity for you.  And if it can be

4  achieved, I hope that it will be, because it perhaps can help

5  us not be here in someone's life.

6     I've considered the factors required by the statute,

7  and I've considered the materials that have been presented to

8  the Court and the statements of everyone that has an interest

9  in this case today, so -- and there not being any legal reason

10  for sentence not now to be pronounced, I will have you,

11  Mr. Leslie, stand before the Court for that purpose, with your

12  attorney.

13     Andrew Ryan Leslie, on October 6th, 2017, you entered

14  a plea of guilty to Count One and Count Two of the indictment,

15  each charging you with production of child pornography, in

16  violation of Title 18, United States Code, Sections 2251(a) and

17  (e).

18     The Court previously accepted your plea of guilty and

19  has adjudged you guilty of those offenses.  There is no legal

20  bar to sentencing at this time.

21     The Court has considered the argument of counsel,

22  defense counsel, its sentencing memorandum and its attachments,

23  the presentence investigation report, the argument of the

24  government, the testimony of family members and of victims, and

25  has considered, pursuant to Title 18, United States Code,

1   Sections 3551 and 3553, those matters required thereunder.

2          It is the judgment of the Court that you, Andrew Ryan

3   Leslie, be committed to the custody of the Bureau of Prisons to

4   be imprisoned for a term of 720 months, 60 years.  This term

5   consists of terms of 360 months on Count One and Two, all such

6   terms to run consecutively.

7          Upon release from imprisonment, you shall serve a

8   lifetime term of supervised release.  This term consists of

9   lifetime terms as to Counts One and Two and are to run

10  concurrently.

11         While on supervised release, you shall comply with

12  the standard conditions adopted by the Court in the Middle

13  District of Florida, and in addition, you shall comply with the

14  following special conditions:

15         You shall participate in mental health treatment

16  programs, outpatient and/or inpatient, and follow your

17  probation officer's instructions regarding the implementation

18  of this Court's directive.

19         Further, you shall contribute to the cost of these

20  services not to exceed an amount to be determined reasonable by

21  your probation officer's sliding scale for mental health

22  treatment services.

23         You shall participate in a mental health program

24  specializing in sexual offender treatment and submit to

25  polygraph testing for treatment and monitoring purposes.  You

1  shall follow your probation officer's instructions regarding

2  implementation of this court order.

3          Further, you shall contribute to the cost of such

4  treatment and/or polygraphs, not to exceed an amount determined

5  to be reasonable by your probation officer based on your

6  ability to pay or availability of third-party payments and in

7  conformance with your probation officer's sliding scale for

8  treatment services.

9          You shall register with the state sexual offender

10 registration agencies in any state where you reside, visit, are

11 employed, carry on a vocation, or are a student, as directed by

12 your probation officer.

13         The probation officer shall provide state officials

14 with all information required under Florida's sexual predator

15 and sexual offender notification and registration statutes,

16 specifically Florida Statutes 943 -- Section 943.0435 and/or

17 the Sexual Offender Registration and Notification Act, commonly

18 known as Title I of the Adam Walsh Child Protection and Safety

19 Act of 2006, Public Law 109-248.

20         Your probation officer may direct that you report to

21 these agencies personally for required additional processing,

22 such as photographing, fingerprinting, and DNA collection.

23         You shall have no direct contact with minors under

24 the age of 18 without the written approval of your probation

25 officer and shall refrain from entering into any area where

children frequently congregate, including schools, daycare
centers, theme parks, playgrounds, and the like.

You are prohibited from possessing, subscribing to,
or viewing any images, video, magazines, literature, or other
materials depicting children in the nude and/or in sexually
explicit positions.

Without prior written approval of your probation
officer, you are prohibited from either possessing or using a
computer, including a smartphone, a handheld computing device,
a gaming console, or an electronic device capable of connecting
to an online service or an Internet service provider.

This prohibition includes a computer at a public
library, an Internet café, your place of employment, or an
educational facility.

You are prohibited from possessing any electronic
data storage medium, including flash drives, compact discs, or
floppy discs, or using any data encryption technique or
program.

If approved to possess or use such a device, you must
permit routine inspection of the device, including the hard
drive and any other electronic data storage medium, to confirm
adherence to this condition.

The United States Probation Office must conduct the
inspection in a manner no more intrusive than necessary to
ensure compliance with this condition.  If this condition might

affect a third party, including your employer, you must inform

the third party of this restriction, including the computer

inspection provision.

You shall submit to a search of your person,

residence, place of business, any storage units under your

control, computer, or vehicle conducted by your probation

officer at a reasonable time, in a reasonable manner, based

upon reasonable suspicion of contraband or evidence of a

violation of a condition of release.

You shall inform any other residents that the

premises or -- and occupants of vehicles that they may be

subject to search, pursuant to this condition.  Your failure to

submit to a search may be grounds for revocation.

You shall be prohibited from incurring new credit

charges, opening additional credit lines, or obligating

yourself for any other major purchases without approval of your

probation officer.

You shall provide your probation officer access to

any requested financial information.

You have been convicted of a qualifying felony, so

you shall cooperate in the collection of DNA, as directed by

your probation officer.

The mandatory drug testing requirements of the

Violent Crime Control Act are waived.  However, the Court

orders that the defendant submit to random drug testing, not to

1    exceed two tests per week.

2         The victims' losses are undetermined, and the Court

3    shall set a date for the final determination of victim losses

4    within 90 days of today's date.

5         Based on your financial status, the Court waives

6    imposition of a fine.

7         Matters for forfeiture have been handled

8    administratively.

9         It is further ordered that you pay the United States

10   a special assessment totaling $200, which is due immediately.

11   And the Court finds that your indigency and the 500 -- excuse

12   me, $5,000 -- in light of your indigency, that the $5,000

13   special assessment, pursuant to 18, United States Code, Section

14   3014, is not imposed.

15        After considering the advisory sentencing guidelines

16   and all the factors identified in Title 18, United States Code,

17   Section 3553(a)(1) through (7), the Court finds that the

18   sentence imposed is sufficient but not greater than necessary

19   to satisfy the statutory purposes of sentencing.

20        It's also the Court's recommendation that the Bureau

21   of Prisons, under its supervision and with its approval, permit

22   the defendant to participate in efforts to prevent and/or treat

23   pedophilia.

24        The Court's accepted your plea agreement, Mr. Leslie,

25   because it's satisfied that the agreement adequately reflects

1    the seriousness of the actual offense behavior and that by

2    accepting the plea agreement, that the statutory purposes of

3    sentencing will not be undermined.

4            To the extent permitted by your plea agreement, you

5    have the right to appeal from the judgment and sentence of this

6    Court within 14 days.  Your failure to do that within the

7    14-day period will be treated as a waiver of your right to

8    appeal.

9            The government may file an appeal from the sentence

10   if it wishes.

11           You're also advised that you're entitled to the

12   assistance of counsel in taking an appeal.  And if you are

13   unable to afford a lawyer, one will be provided for you.

14           If you are unable to afford the filing fee associated

15   with taking an appeal, the clerk of the court will be directed

16   to accept your notice of appeal without a fee.

17           The Court having pronounced sentence, does counsel

18   for the defendant or government have any objections to the

19   sentence or the manner in which the Court has pronounced

20   sentence, other than those previously stated for the record?

21           MR. BROWN:  No objection from the United States, Your

22   Honor.

23           MR. ROSENBLUM:  Your Honor, from the defendant,

24   objection is made to the Court's failure to adequately take

25   into account the mitigating 3553 factors that were brought up

1   on behalf of Mr. Leslie.

2           THE COURT:  Very good.  Your objection's noted for

3   the record.  It will be overruled.  The Court's sentence will

4   be as stated.

5           Thank you.

6           We're in recess.

7           COURT SECURITY OFFICER:  All rise.

8       (The proceedings were concluded at 3:34 p.m.)

9                           -  -  -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                CERTIFICATE OF OFFICIAL COURT REPORTER

2

3

4  UNITED STATES DISTRICT COURT )

5  MIDDLE DISTRICT OF FLORIDA    )

6

7          I hereby certify that the foregoing transcript is a

8  true and correct computer-aided transcription of my stenotype

9  notes taken at the time and place indicated therein.

10

11         DATED this 2nd day of May, 2018.

12

13                          s/Shelli Kozachenko_____
                            Shelli Kozachenko, RPR, CRR, CRC
14                          Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25