EXHIBIT 1

**Ground One continued from form:**

sections, and aiding and abetting violations of these sections—as well as the rape or sexual abuse of a minor." *The federal crimes that Movant was expected to provide information about were the exact crimes excluded from immunity in the agreement.*[1]

In addition, the agreement required Movant to "provide any necessary passwords or passphrases in order to decrypt any [encrypted digital devices in the custody of law enforcement pursuant to the search of Movant's home on October 18, 2016] and [defendant] understand[s] that [he] may face prosecution, without limitation, bases on information contained therein." At the time of the proffer, the only physical evidence that the government had against Movant were photographs of two children found on a camera SD card. All other physical evidence was encrypted on Movant's computers and in the custody of the government. The government did not have the ability to decrypt the evidence without the passwords from Movant.

The Department of Justice's policy is to not provide 5K1.1 motions in cases unless, at a minimum, the defendant can provide substantial assistance with the prosecution of additional defendants. In this case, it was clear that Movant did not have any information to assist with prosecution of additional defendants. A proffer agreement was clearly futile; there would be no reduction in the Movant's sentence in exchange for information about additional criminal activity. The only criminal activity that Movant knew about was his own.[2]

Counsel was clearly ineffective for advising Movant to enter into a proffer agreement that provided Movant with no protections, for advising Movant to confess additional crimes and criminal activities to the government without any protections, and for advising Movant to provide the government with passwords to incriminating evidence in the government's possession that otherwise would have been unavailable to prosecutors.

With respect to Movant's case in the Middle District of Tennessee at Nashville, the additional, inculpatory information, provided by Movant, was included in the Tennessee Pre-sentence Report, cited by the MDTN AUSA's in the government's sentencing position and arguments, and used as enhancement factors in Movant's sentencing hearing in Tennessee, where photographs taken from Movant's computer were used as exhibits.

During the Florida sentencing hearing, the government referred to evidence that was made available to the government solely through Movant's proffer sessions. The Government could do this without violating the agreement because there was no immunity related to information about child pornography.

---

[1] The Proffer Agreement is attached to this pleading as Exhibit 2.

[2] As stated by the government in the sentencing hearing, Dane Falte, a codefendant in the companion Tennessee case, had already provided inculpatory information about himself and the Movant. The Government did not need information about Falte from Movant. The fact that no good would come from the proffer sessions was clear upon a close reading of the discovery and speaking with Movant.

EXHIBIT 1

**Ground Two Continued from form:**

when he was well past the appropriate age, clandestinely pilfering them from younger children in the neighborhood. [34]

In Dr. Cohen's report, Movant freely admitted he had inappropriate, sexual contact with underaged children. Movant admitted to abusing children he was babysitting. Movant confessed that he fondled his first infant when he was 13 and at 19 had his first sexual intercourse with an infant. The report states that Movant "felt 'bad' about engaging in sex acts with children less than five years old but felt 'less bad' about children aged 10 and up since he believed it was more consensual." Before the interview was over, Movant had confessed to sexually abusing eight different children, all under the age of 12. The report also included a line that "[Movant] admitted that he sometimes scolded the children when they did not do what he wanted." This fact, when read with the report as a whole, adds a deeper level of "horror," as expressed the Court during sentencing.

In the report, again presented by the defense to allegedly mitigate the sentence, Movant reported that he first viewed child pornography at age 10, and had last viewed child pornography the night before he was arrested. He admitted that he had produced at least ten child pornography videos and had taken about 150 CP photographs. While Movant never paid money for child pornography, he admitted to sharing images and videos online and trading materials with a person in Tennessee. This led to Movant's collection of child pornography, approximately 1 gigabit in size. Movant revealed that as he continued to view CP, his attraction expanded from, children between the ages of six to

---

[3] Paraphilias are frequent, intense, sexually arousing fantasies or behaviors that involve inanimate objects, children or nonconsenting adults, or suffering or humiliation of oneself or the partner. This would include Movant's desire to wear diapers or children's panties, his interest in sadomasochism pornography, and interest in sexual acts involving urine, all included in the report. Paraphilic disorders are paraphilias that cause distress or cause problems functioning in the person with the paraphilia or that harm or may harm another person. This would include Movant's sexual acts with dogs and children. The attraction to children can be further classified not just as a paraphilia disorder, but as pedophilia disorder.

[4] Many of the behaviors and thoughts of Movant qualify as indictive of paraphilic disorder and pedophilic disorder (when related to his attraction to children). Paraphilia and Pedophilia are examples of psychiatric disorders, also defined as mental illnesses. They are defined in the DSM-5. The Court made comments during the sentencing hearing that made it apparent the Court did not accept that Movant's sexual behaviors were driven by mental illness.

> "[P]erhaps those that suffer from a psychiatric illness that [the horror associated with the crime committed] has to be a manifestation of or the condition [of pedophilia], as you describe it [, Mr. Rosenblum], or perhaps the criminal conduct, as you describe it, Mr. Brown. (DE# 66, p.44, L. 1-4.)
>
> I'm required to consider whether there are any - - whether there's anything that appropriately should suggest a tempering, if you will, of the completeness of the punishment as it relates to the seriousness of the offense.
> And I'll tell you, one thing that's been offered, which is [Movant's] willingness to acknowledge his proclivities and to suggest that he could not do anything about them - - despite the psychologist's argument, Mr. Rosenblum, I don't believe it. (DE# 66, p.44, L. 10-18.)

EXHIBIT 1

ten, to all children, from newborns to twelve years old.

This Confidential Psychological Evaluation and Report was so incriminatory, that the government did not object to its admission and instead welcomed the report.

> The psych report that was contained in the - - attached to the sentencing memorandum, the Court knows that oftentimes the United States will object to the admission of reports.
>
> We didn't object to the admission of the report this time for several reasons, not the least of which it contained inculpatory statements which - - which, like under the evidence code, when someone says something that inculpates them, it's presumed to be truthful, which is why hearsay on that ground is admissible. So there doesn't appear to be a lot exculpatory in it, and so therefore, that's one of the reasons why we didn't object."

(DE# 66, P.35, LL. 1-12.)

And as the government stated, the report made Movant appear "tone-deaf" because Movant did not acknowledge the psychological and emotional trauma he caused. (DE# 66, P.37, LL. 5-6.)

The government summed up the report:

> So there's no question this is not a case where anybody doubts that we're dealing with a pedophile. And so I would submit to you that because there's no reference to low risk of recidivism, that I would imagine a person with this type of deep-seated - - Mr. Rosenblum calls it sickness. I call it a condition. I also call it criminal conduct - - that I would submit because it's so deep-seated, this defendant can never be trusted around children again, ever, and should never be trusted around children again.

(DE# 66, P.38, LL. 3-11.)

In summary, to file such an inculpatory report, when the only benefit it added to the case was that the Movant had an official diagnosis of pedophilia, when the facts of the case made that perfectly clear without the report, denied Movant of his effective assistance of counsel.

EXHIBIT 1

**Ground Three Continued from form:**

not provided with any written documentation to support his sentence calculations. Movant was not provided with a written copy of any of the USSG guidelines.

The plea agreement also stated that "defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney." This waiver does not make sense because of course Movant relied on information that was provided to him by his attorney in making his decisions. That is the entire purpose of having the effective assistance of counsel when charged with a crime.

There are two sections in the Plea Agreement, that might appear to be consideration/benefits for the Movant upon first glance, but after thoughtful reflection, they are not. The first issue is the government's pledge to not charge Movant with other federal criminal offenses in the Middle District of Florida. This is a meaningless promise because, based on Movant's double jeopardy right, the government would have had to have charged related criminal behavior, in the FLMD in the same indictment. Movant was charged with additional criminal acts in the Middle District of Tennessee which was not subject to the plea agreement.

The second issue was the government's offer to consider filing a 5K1.1 motion for substantial assistance for the benefit of Movant. Again, this was not meaningful because Movant was not able to provide the government with enough information to prosecute other defendants for crimes.

It clearly would have been in Movant's best interest to plead guilty without the limitations of a Plea Agreement. Had Movant been advised correctly, he would not have chosen to enter into the agreement.

EXHIBIT 1

**Ground Five:**

Once counsel advised Movant to proffer for the government, and had Movant disclose additional criminal actions to law enforcement which was used against him at sentencing, counsel was ineffective in not securing any benefits for the Movant. This was in violation of the 6th Amendment to the United States Constitution.

a. Counsel allowed the Movant to be fully de-briefed by the government without negotiating or attempting to negotiate any benefit for Movant, either through a more favorable plea agreement or a recommendation by the government of a sentencing reduction to the court at the sentencing hearing.

b. Direct Appeal for Issue included in Ground Five:

   1. This issue was not raised in the appeal.

   2. In the appeal, counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967). No issues were raised.

c. There was no post-conviction proceeding for Ground Five.

EXHIBIT 1

**Ground Six:**
Movant's sentence is disproportional when compared to the facts of the case and therefore amounts to cruel and unusual punishment in violation of the 8th Amendment to the United States Constitution.

a.  Movant, when considering only the facts known to the government before Movant's proffer or psychological report were introduced, was charged with production of child pornography regarding two children. While the children's age can be a very disquieting factor when first considered (This is clearly a sign that Movant suffers from Pedophilia Disorder) upon further contemplation, the facts of the case are not as horrifying as one might imagine. And, while Movant does not want to discount the seriousness of the offense, in order to gage this crime when compared to other child pornography production cases, one must look candidly at the factors involved.

   The photographs were discovered within days of their creation and this gave law enforcement the opportunity to have the children physically examined. Neither child suffered any physical harm from Movant's actions. This is a positive factor. There have been cases where children are physically harmed by sexual acts. That did not happen here. Next, while again not discounting the seriousness of the case, these children who were under the age of three will not have clear memories of what happened to them. This will also be a blessing. While the parents and other loving family members have been emotionally harmed, the children will not have "true" memories of the events. They only way that they will have any knowledge of the case is if someone tells them about it. For these reasons, a sentence at the top of the guideline range is not in proportion to the facts of this case. A sentence of sixty years amounts to cruel and unusual punishment for Movant.

b.  Direct Appeal for Issue included in Ground Six:

   1.  This issue was not raised in the appeal.

   2.  In the appeal, counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967). No issues were raised.

c.  There was no post-conviction proceeding for Ground Six.