# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

ANDREW RYAN LESLIE,

        Movant,

vs.                                Case No.:   3:19-cv-1300-BJD-JBT
                                                      3:16-cr-154-BJD-JBT

UNITED STATES OF AMERICA,

        Respondent.

_____/

## **ORDER**

    Andrew Ryan Leslie, through counsel, moves under 28 U.S.C. § 2255 to vacate his convictions and sentence for two counts of producing child pornography. (Civ. Doc. 12, Second Amended § 2255 Motion; Civ. Doc. 12-1, Movant's Ex. 1; Civ. Doc. 12-2, Movant's Ex. 2.)[1] He alleges that his attorney gave ineffective assistance in pre-plea proceedings, plea negotiations, and at sentencing, and that his sentence is cruel and unusual. The United States responded in opposition (Civ. Doc. 20, Response) and Leslie replied (Civ. Doc. 21, Reply).[2] Thus, the case is ripe for a decision.

---

[1]     "Civ. Doc. __" refers to entries on the civil § 2255 docket, No. 3:19-cv-1300-BJD-JBT. "Crim. Doc. __" refers to entries on the criminal docket, No. 3:16-cr-154-BJD-JBT.

[2]     Leslie also filed a "Memorandum of Law in Support of Motion to Vacate, Set Aside, or Correct Sentence" (Civ. Doc. 22) nearly nine months after filing the Second Amended § 2255 Motion and more than a month after the government responded. Leslie did not request leave to file the belated memorandum. Thus, it is due to be **stricken**. In any event, considering the Memorandum does not alter the analysis.

Under 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[3], the Court has considered the need for an evidentiary hearing and determines that a hearing is unnecessary to resolve the merits. No evidentiary hearing is required because Leslie's allegations are affirmatively contradicted by the record, patently frivolous, or even assuming the facts he alleges are true, he still would not be entitled to relief. Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015); see also Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[4] Leslie's Second Amended § 2255 Motion is due to be denied.

## I.    Background

Leslie came to the attention of the United States Department of Homeland Security in 2015, when Homeland Security Investigations (HSI) launched an investigation into certain websites known to host videos and images of child pornography. Presentence Investigation Report ("PSR") (Crim. Doc. 50) ¶ 8. In 2016, agents identified Leslie as a member of one of these websites and an administrator of another. Id. Further investigation revealed that Leslie lived in Middleburg, Florida. In April 2016, HSI agents began

---

[3]     Rule 8(a) of the Rules Governing Section 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before resolving a § 2255 motion.

[4]     The Court does not rely on unpublished opinions as binding precedent, but they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

monitoring Leslie's internet activity using a "pen register tap and trace." Id. But in August 2016, the pen register concluded because Leslie switched internet service providers and stopped using the monitored account. Id.

In October 2016, law enforcement officers arrested three individuals for their involvement in child pornography, one of whom "reported a previous face-to-face meeting with Leslie in Nashville, Tennessee." Id. ¶ 9. This individual would become known as Patrick Dane Falte. Sentencing Transcript (Crim. Doc. 66) at 42; see also United States v. Falte, No. 3:17-cr-44 (M.D. Tenn.). Falte stated that in online chats and in meeting Leslie, they shared their mutual attraction to children and watched child pornography they had made themselves or received from other sources. PSR ¶ 9.

> During the meeting, Leslie showed [Falte] video files depicting female toddlers and infants. One of the video files showed Leslie anally penetrating an infant. Leslie told the individual that he had access to the children because he babysat them or was related to them. Leslie stated one of the children belonged to a former girlfriend. Forensic review of [Falte's] computer revealed child pornography that had been distributed to him by Leslie.

Id.

On October 18, 2016, officers from HSI and other agencies executed a federal search warrant at Leslie's residence in Middleburg, Florida. Id. ¶ 10. When agents entered the home, they "witnessed Leslie emerge from the master bedroom. Leslie stated, in substance, that a minor female child, referred to by Leslie as a 'toddler,' had been in bed with him when the agents arrived (later

identified as Child 1)." Id. While searching the home, officers found a digital camera in the master bedroom next to the bed, which contained an SD adapter and an SD card. Id. ¶ 11. Forensic examination of the SD card revealed forty-two pornographic images depicting Leslie with two minor female children: "Child 1," who was about two years old at the time, and "Child 2," who was about seven months old. Id. ¶ 12.

> These images depicted, among other things, Child 1 being vaginally and orally penetrated by Leslie's penis. There were also images depicting the lascivious exhibition of Child 2's genitalia. In several images, Leslie [was] depicted gripping his own penis and contacting the genitalia of Child 1 with it.

Id. HSI agents also seized several other computer devices from Leslie's residence. Id. ¶ 13. While agents were executing the search warrant, a woman came to the residence with a child and "advised the agents that she was dropping her child off for Leslie to babysit." Id. ¶ 14. That child was the victim known as Child 2. See id.; see also id. ¶ 3.

Leslie was arrested that same day and the Court appointed Mark Rosenblum, a seasoned federal public defender, to represent him. (Crim. Doc. 6.) A federal grand jury indicted Leslie on two counts of producing child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e). (Crim. Doc. 13, Indictment.) Count One charged Leslie with producing visual depictions of Child 1 engaged in sexually explicit conduct. Count Two charged Leslie with producing visual depictions of Child 2 engaged in sexually explicit conduct.

A couple of months after his arrest, Leslie signed a proffer agreement and consented to be interviewed by the government "about potential violations of federal criminal laws involving, but not necessarily limited to, violations of 18 U.S.C. §§ 2241, 2251, 2251A, and 2252, et seq., pertaining to the sexual abuse and exploitation of children." Signed Proffer Agreement (Civ. Doc. 20-1) p. 1. The agreement promised "use immunity," meaning that statements provided during the proffer would be inadmissible in the government's case-in-chief or at sentencing, albeit with some exceptions. One exception allowed for "derivative use," and another precluded use immunity from extending to "crimes of violence," which the agreement defined to include violations of 18 U.S.C. §§ 2241–2245, 2251, 2251A, and 2252A(g), as well as the rape or sexual abuse of a minor. During the proffer, Leslie disclosed the passwords to his computer devices, which led to the discovery of "approximately 33,000 images and videos of child pornography." PSR ¶ 16. Leslie also reported that he had "sexually abused three additional children" and photographed a fourth child, id. ¶ 17, evidence of which was also found on Leslie's devices, id. ¶ 16.

On October 6, 2017, Leslie pled guilty under a written Plea Agreement to the charges in the Indictment. Plea Agreement (Crim. Doc. 39); Plea Transcript (Crim. Doc. 65). As to Count One, Leslie admitted to producing images that depicted him vaginally and orally penetrating Child 1 with his penis. Plea Agreement at 21–23; Plea Tr. at 24–27. As to Count Two, Leslie admitted to

producing images that depicted the lascivious exhibition of Child 2's genitalia. Id. Leslie also admitted that he had produced, received, distributed, and possessed numerous other images and videos of child pornography on his computer devices, and that during online conversations, he had discussed engaging in sexual activity with several minor children. Id. The Magistrate Judge who presided over the plea colloquy reported that "[a]fter cautioning and examining the Defendant under oath concerning each of the subjects mentioned in Rule 11, I determined that the guilty plea was knowledgeable and voluntary, and that the offenses charged [are] supported by an independent basis in fact containing each of the essential elements of such offenses." (Crim. Doc. 40.) The Court accepted Leslie's plea without objection and adjudicated him guilty. (Crim. Doc. 42.)

According to the Presentence Investigation Report, Leslie's guidelines offense level was 48 (though it maxed out at 43 under U.S.S.G. § 5A) and his Criminal History Category was I, yielding a guideline sentence of life imprisonment. See PSR ¶¶ 55–58, 61, 102. But because the cumulative statutory maximum penalty was 60 years' (720 months') imprisonment, that became his guidelines range. Id. ¶ 102. At sentencing, the Court heard arguments from the parties and considered a psychological report submitted by Leslie's attorney, which showed that Leslie was diagnosed with Pedophilic Disorder, Gender Dysphoria Disorder, and Major Depressive Disorder. See

Report of Dr. Robert E. Cohen (Crim. Doc. 49-4). Leslie's attorney, Mr. Rosenblum, acknowledged the gravity of the crime, but argued in mitigation that Leslie suffered from a psychological disorder, that Leslie wanted and was undergoing professional treatment, and that Leslie was uniquely forthcoming with the psychologist and with investigators. Sentencing Memorandum (Crim. Doc. 49); Sentencing Tr. at 11–18. The Court also heard a statement from Leslie's mother, a statement in allocution by Leslie, and impact statements by two family members of the victims. Sentencing Tr. at 19–21, 39–42. The government, while arguing that the crime deserved a severe sentence, suggested that a below-guidelines sentence of 50 years' imprisonment (but no less) might be warranted considering Leslie's cooperation. Id. at 42–43. Based on the egregious facts of the crimes, the harm to the victims, and the need to protect the public, the Court sentenced Leslie to a term of 720 months in prison, followed by a lifetime term of supervised release. Sentencing Tr. at 43–47; Judgment (Crim. Doc. 53).

Meanwhile, Leslie was convicted in the United States District Court for the Middle District of Tennessee of one count of engaging in a child exploitation enterprise. M.D. Tenn. Judgment (Civ. Doc. 20-2). He was sentenced to a term of 360 months in prison, running concurrently with the sentence in this case. Id. That sentence is not under challenge here.

Leslie appealed his sentence in this case. His appellate attorney filed a motion to withdraw and a brief under Anders v. California, 386 U.S. 738 (1967). Leslie moved for the appointment of new appellate counsel, which the Eleventh Circuit denied. United States v. Leslie, 742 F. App'x 487, 488 (11th Cir. 2018). After an independent review of the record, the court determined there were no arguable issues of merit and affirmed Leslie's convictions and sentence. Id.

These § 2255 proceedings timely followed.

## II.   Discussion

Under Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits collateral relief on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C § 2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184–86 (1979); Spencer v. United States, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc) ("[A] district court lacks the authority to review the alleged error unless the claimed error

constitute[s] a fundamental defect which inherently results in a complete miscarriage of justice." (internal quotation marks omitted)). A petitioner's claim that he received ineffective assistance of counsel in violation of the Sixth Amendment is properly brought in a collateral proceeding under § 2255. Massaro v. United States, 538 U.S. 500, 504 (2003).

To establish ineffective assistance of counsel, a § 2255 petitioner must establish both: (1) that his counsel's conduct amounted to constitutionally deficient performance, and (2) that counsel's deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). In determining whether counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994) (citing Strickland, 466 U.S. at 688). The petitioner must show, given all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance." Scott v. United States, 890 F.3d 1239, 1258 (11th Cir. 2018) (internal quotation marks and citation omitted). In other words, "[t]he standard for effective assistance of counsel is reasonableness, not perfection." Brewster v. Hetzel, 913 F.3d 1042, 1056 (11th Cir. 2019) (citing Strickland, 466 U.S. at 687). To show that counsel's deficient performance prejudiced the defense, the petitioner must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Martin v. United States, 949 F.3d 662, 667 (11th Cir. 2020)

(citation omitted). In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. <u>Strickland</u>, 466 U.S. at 695. Because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." <u>Id.</u> at 697.

A § 2255 movant "bears the burden to prove the claims in his § 2255 motion." <u>Rivers v. United States</u>, 777 F.3d 1306, 1316 (11th Cir. 2015); <u>see also</u> <u>Beeman v. United States</u>, 871 F.3d 1215, 1221–23 (11th Cir. 2017). If "'the evidence does not clearly explain what happened … the party with the burden loses.'" <u>Beeman</u>, 871 F.3d at 1225 (quoting <u>Romine v. Head</u>, 253 F.3d 1349, 1357 (11th Cir. 2001)). A § 2255 movant is not entitled to a hearing, much less relief, "when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." <u>Tejada v.</u> <u>Dugger</u>, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted).

**A. Ground One**

Leslie first alleges that Mr. Rosenblum gave ineffective assistance "by advising Movant to enter into a proffer agreement when the proffer agreement provided Movant with absolutely no protections and exposed Movant to additional crimes and increased penalties." Sec. Am. § 2255 Mtn. at 4. The agreement disadvantaged him, Leslie claims, because the proffer agreement (1)

exempted from use immunity the very crimes for which he was being interviewed, (2) required Leslie to turn over the passwords to his encrypted devices, and (3) did not allow Leslie to earn a motion for a substantial assistance reduction because the only person Leslie could have provided information about—Patrick Dane Falte—had already given authorities in Tennessee incriminating information about himself and Leslie. Leslie asserts that "[t]he fact that no good would come from the proffer sessions was clear upon a close reading of the discovery and speaking with Movant." Movant's Ex. 1 at 1 n.2.

Leslie contends he was prejudiced because (1) inculpatory information he gave during the proffer was used against him at sentencing in the Middle District of Tennessee, and (2) the government here "referred to evidence [at sentencing] that was made available to the government solely through Movant's proffer sessions," which was allowed under the proffer agreement because of the exemption for "crimes of violence." Id. at 1.

The record does not support Leslie's claim of ineffective assistance.[5] On record is a signed copy of the proffer agreement, which was signed by Leslie, his attorney, counsel for the government, and one of the case agents. Signed Proffer Agreement (Civ. Doc. 20-1). Leslie affirmed he had read the entire agreement,

---

[5]     The Court assumes, for the sake of discussion, that Mr. Rosenblum did not advise Leslie against accepting the proffer agreement. But if Leslie's discussions with Dr. Cohen offer any indication, Leslie may have wanted to speak to the government about his conduct – regardless of counsel's advice for or against it – because he had a guilty conscience and was eager to "get it off [his] chest." See Dr. Cohen's Report (Crim. Doc. 49-4) p. 4.

discussed it with his attorney, had it fully explained to him by his attorney, and voluntarily and knowingly accepted its terms. Id. p. 4. Likewise, Leslie's attorney, Mr. Rosenblum, affirmed that he had discussed the agreement with Leslie, explained its terms to him, and, to the best of his knowledge, Leslie accepted its terms knowingly and voluntarily. Id. Here, Leslie does not allege that Mr. Rosenblum failed to accurately and completely explain the proffer agreement, or that Leslie did not understand the terms of the agreement. See Sec. Am. § 2255 Mtn. at 4; Movant's Ex. 1 at 1.[6] Nor does he allege that he was forced or coerced into accepting the proffer agreement. See id. And Leslie does not allege that, if not for the proffer, he would have insisted on going to trial instead of pleading guilty. See id. He simply second-guesses the wisdom of the proffer agreement. But Leslie, a sophisticated criminal, cannot reasonably blame counsel for his own knowing and voluntary decision to agree to the proffer now that he has buyer's remorse. See Yick Man Mui v. United States, 614 F.3d 50, 57 (2d Cir. 2010) (ineffective assistance claims "are quite often the law's equivalent of 'buyer's remorse' or 'Monday morning quarterbacking' and can be

---

[6]     In his Reply brief, Leslie alleges for the first time that counsel advised him "that the information provided to the government [in the proffer] would not be used against him at trial or sentencing." Reply at 1. A § 2255 movant may not raise new allegations in a reply to the government's response. Oliveiri v. United States, 717 F. App'x 966, 967 (11th Cir. 2018). Leslie also failed to request leave to amend his Second Amended § 2255 Motion to add such an allegation.

12

quickly resolved. Decisions by criminal defense counsel are often choices among bad alternatives that are only rarely shown to be" ineffective).

Nor is it true that the proffer agreement offered Leslie no benefits and no protections. Under the proffer agreement, Leslie agreed to talk to the government about federal crimes "involving, but not necessarily limited to, violations of 18 U.S.C. §§ 2241, 2251, 2251A, and 2252, et seq." Id. p. 1. Subject to some exceptions, the agreement promised that "no statements provided by [Leslie or his attorney] during the interview session will be admissible against [Leslie] in the government's case-in-chief or at sentencing." Id. A couple of exceptions were that the government could make derivative use of Leslie's statements and that the government would "remain free to discharge its duty to the court by informing the court of any information [Leslie gave]," provided that the Court would "be notified that such information was obtained pursuant to the grant of use immunity." Id. p. 2. But the main exception—and the one Leslie raises here—was that use immunity would "not extend to crimes of violence," which included violations of 18 U.S.C. §§ 2241–2245, 2251, 2251A, and 2252A(g), and "the rape or sexual abuse of a minor." Id. p. 3. Leslie says this exemption was coextensive with the subject matter of the interview, effectively stripping Leslie of any protections. That is untrue. As the agreement reflects, Leslie agreed to speak to the government about federal crimes "involving, but not necessarily limited to, violations of 18 U.S.C. §§ 2241, 2251,

2251A, and 2252, et seq." Id. p. 1 (emphasis added). Section 2252, for example, which encompasses the receipt, distribution, and possession of child pornography, was a topic of the interview that was not exempt from use immunity. Indeed, even though the information Leslie gave during the proffer (including the passwords to his devices) led to evidence that he possessed 33,000 images of child pornography and had abused or photographed four other children, the government never sought a superseding indictment to bring additional charges based on that evidence.

Plus, sitting for the proffer offered potential benefits beyond the hope of gaining a substantial assistance motion under U.S.S.G. § 5K1.1. Leslie's cooperation with law enforcement could reflect positively on his "history and characteristics" for sentencing purposes, 18 U.S.C. § 3553(a)(1), and persuade the Court of Leslie's remorse and desire to make amends—to the extent making amends was possible. Thus, even without the potential for a 5K1.1 motion, a competent attorney could have reasonably advised Leslie to sit for the proffer. See Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc) ("[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." (emphasis added)).

14

And in some respects, this strategy achieved the desired effect. At sentencing, Mr. Rosenblum argued that Leslie's cooperation had proven to be "extremely valuable to law enforcement" and was a mitigating factor. Sentencing Memorandum (Crim. Doc. 49) at 4; Sentencing Tr. at 11–18. The Court itself recognized Leslie's "candor and openness" in the proffer and stated it had "taken particular note of that." Sentencing Tr. at 13. Even the government described Leslie's cooperation as a "laudable" effort that "certainly should be considered by this Court," id. at 33–34, and in recognition of that, suggested that a below-guidelines sentence of 50 years' imprisonment (but no less) could be appropriate, id. at 42–43. In the end, Leslie's cooperation was not enough to convince the Court to sentence him to less than 720 months' imprisonment. But the fact that the defense's strategy "ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness." Chandler, 218 F.3d at 1314. While it is tempting to judge an attorney's performance through the "distorting" lens of hindsight, "counsel's perspective at the time" of the challenged action is what matters. Strickland, 466 U.S. at 689. Judged through that lens, Mr. Rosenblum's performance was not objectively unreasonable.

Nor has Leslie established prejudice. To the extent Leslie argues that the information he provided during the proffer was used against him at sentencing in the Tennessee case, that claim goes to his sentence in that case, not this one. Besides, Leslie's 360-month sentence in the Tennessee case runs concurrently

with his sentence here, so even if the information provided during the proffer increased his sentence in the Tennessee case, it did not affect his overall sentence. To the extent Leslie argues that the government used information he gave during the proffer against him at sentencing in this case (which he does not contend violated the proffer agreement), that was a risk he knowingly and voluntarily assumed. In any event, Leslie fails to show a reasonable probability that his sentence would have been any lower even if proffer-derived information had never been introduced at sentencing. See Strickland, 466 U.S. at 694. The facts of the charged crimes themselves—and the facts he admitted in connection with his guilty pleas—were enough to support the guidelines calculation, see PSR ¶¶ 31–55, and the Court's 720-month sentence.

As a result, Leslie fails to show that counsel's performance was deficient or prejudicial under Strickland. Relief on Ground One is due to be denied.

## B. Ground Two

Leslie alleges that Mr. Rosenblum gave ineffective assistance by filing the Confidential Psychological Evaluation and Report of Dr. Robert E. Cohen, a licensed psychologist, as an exhibit to the sentencing memorandum. Sec. Am. § 2255 Mtn. at 5; Movant's Ex. 1 at 2–3. Leslie alleges that the report contained information that "was very harmful to Movant." Sec. Am. § 2255 Mtn. at 5. Leslie concedes that "information about Movant's thoughts and behaviors may have been important and necessary to obtain an understanding of Movant's

16

diagnosis and his behavioral and psychological functioning." <u>Id.</u> But, he argues, the "raw statements" presented in the report "only served to paint him as a dangerous 'pervert' who had extensive criminal activity with children." <u>Id.</u> He asserts that the report "emphasized the need to sentence Movant to a maximum available sentence rather than mitigate his prison time." <u>Id.</u> According to Leslie, "the only benefit [the report] added to the case was that the Movant had an official diagnosis of pedophilia, when the facts of the case made that perfectly clear without the report." Movant's Ex. 1 at 3.

Dr. Cohen's report reflected that Leslie enjoyed wearing children's underwear and diapers when he was between 8 and 12 years old, that he began watching child pornography and engaging in "peeping tom" activities between the ages of 10 and 11, and that he first fondled an infant when he was 13 years old (among other deviant sexual interests). Dr. Cohen's Report p. 2. The report said that Leslie freely admitted to abusing other children and felt guilty about abusing children under age 5, but that he felt less bad about having sex with children aged 10 years and older because he thought that was more consensual. <u>Id.</u> p. 3. Leslie told Dr. Cohen he was happy to talk to him about these things and "get it off [his] chest," and that he felt remorse about the physical harm to the children. <u>Id.</u> p. 4. Dr. Cohen reported that Leslie appeared to be earnest and showed no signs of manipulation. <u>Id.</u> Dr. Cohen diagnosed Leslie with

Pedophilic Disorder, Gender Dysphoria Disorder, and Major Depressive Disorder. Id. p. 8.

Mr. Rosenblum argued that Dr. Cohen's report showed that Leslie suffered from a "sickness" that required treatment, that Leslie was eager to receive treatment, and that Leslie had wanted treatment since he was younger but did not know how to ask for help. Sentencing Memorandum at 2–4, 7; Sentencing Tr. at 11–18. The government countered that the report revealed more inculpatory information than exculpatory information, failed to address Leslie's risk of recidivism, and indicated that Leslie's pedophilia was "so deep seated, this defendant can never be trusted around children again, ever." Sentencing Tr. at 35–38. The Court acknowledged having read Dr. Cohen's report "with much interest" and thanked Mr. Rosenblum for sharing it with the Court. Id. at 15–16. But when explaining the sentence, the Court referred to the report only in rejecting the argument that Leslie could not have controlled his actions and could not have sought treatment earlier:

> I'm required to consider whether there are any – whether there's anything that appropriately should suggest a tempering, if you will, of the completeness of the punishment as it relates to the seriousness of the offense.
>
> And I'll tell you, one thing that's been offered, which is Mr. Leslie's willingness to acknowledge his proclivities and to suggest that he could not do anything about them – despite the psychologist's argument, Mr. Rosenblum, I don't believe it.

> Anyone who is sophisticated enough to hide this conduct in the ways that your client hid this conduct is smart enough, resourceful enough to find help if he truly wanted it. And had he found help, we wouldn't be here.

Id. at 44. But the Court did not draw from the inculpatory aspects of Dr. Cohen's report in explaining the 720-month sentence. See id. at 43–47.

Leslie's allegations fail to show that Mr. Rosenblum's decision to submit Dr. Cohen's report was deficient under Strickland. To be sure, Dr. Cohen's report contained a mix of potentially harmful and potentially helpful information. On one hand, the report reflected that Leslie had engaged in uncharged sex crimes against children and that he harbored deep-seated deviant sexual interests. On the other hand, the very fact that Leslie developed extreme sexual proclivities at a young age reflected that he had a genuine psychological disorder. A reasonable attorney could have gone either way in deciding whether to submit Dr. Cohen's report for consideration at sentencing. Mr. Rosenblum could have reasonably concluded that the report would show that (1) Leslie's actions stemmed from a psychological illness, and (2) Leslie was earnest about pursuing treatment. See Chandler, 218 F.3d at 1315 (because assessing the reasonableness of counsel's performance is an objective inquiry, if a court could conceive of reasonable strategic motives for counsel's actions, counsel's performance is not deficient (citing United States v. Fortson, 194 F.3d 730, 736 (6th Cir. 1999))). Leslie fails to show that "no competent counsel" would

have submitted Dr. Cohen's report. Id. Thus, he has not shown that Mr. Rosenblum's performance was objectively unreasonable.

Nor has Leslie shown that, had Mr. Rosenblum not submitted Dr. Cohen's report, there is a reasonable probability his sentence would have been any lower. Strickland, 466 U.S. at 694. The Court did not cite the inculpatory aspects of the report in explaining why it imposed a 720-month sentence. While the Court referred to "the horror associated with the crime committed," "the seriousness of the offense," and the "reprehensible, unimaginable, [and] unbearable" nature of the crime, Sentencing Tr. at 43, these observations were supported by the facts of the admitted crimes themselves, without regard to the contents of Dr. Cohen's report. Thus, Leslie fails to establish prejudice under Strickland. Relief on Ground Two is due to be denied.

**C. Ground Three**

Leslie alleges that Mr. Rosenblum was ineffective in connection with advising him about the plea agreement. Sec. Am. § 2255 Mtn. at 7; Movant's Ex. 1 at 4. This claim can be divided into two parts. First, he alleges that Mr. Rosenblum was ineffective for advising him to accept a plea agreement in which Leslie waived all "meaningful appeal rights" "without receiving any

consideration in return." Sec. Am. § 2255 Mtn. at 7.[7] Second, he alleges that counsel misadvised him about the potential sentence, telling him he would receive "an effective life sentence" if he did not accept the plea agreement, even though the cumulative statutory maximum was 60 years in prison. Id. He also alleges that counsel failed to review the guidelines calculation with him or give him any supporting documentation. Id.; see also Movant's Ex. 1 at 4.

Leslie does not allege that, but for counsel's purported errors, he would not have pled guilty and would have gone to trial. Instead, he alleges only that "[i]t clearly would have been in Movant's best interest to plead guilty without the limitations of a Plea Agreement. Had Movant been advised correctly, he would not have chosen to enter into the agreement." Movant's Ex. 1 at 4.

In Hill v. Lockhart, the Supreme Court held "that the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel." 474 U.S. 52, 58 (1985). To succeed on a claim that a guilty plea was obtained as the result of ineffective assistance of counsel, a § 2255 movant must show that (1) the advice he received from counsel "fell below an objective standard of reasonableness," id. at 57, and (2) "there is a reasonable

---

[7]    Under the Plea Agreement, Leslie waived the right to appeal his sentence except under four circumstances: (1) the sentence exceeded the guidelines range as determined by the Court, (2) the sentence exceeded the statutory maximum, (3) the sentence violated the Eighth Amendment, or (4) the government exercised its right to appeal the sentence. See Plea Agreement at 14–15. The Court reviewed the sentence-appeal waiver during the plea colloquy, and Leslie stated that he knowingly and voluntarily accepted it. Plea Tr. at 21–22.

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," id. at 59.

Leslie's allegations do not support granting relief. He first asserts that Mr. Rosenblum was ineffective for advising him to accept a plea agreement in which he received no consideration for waiving all "meaningful appeal rights." Sec. Am. § 2255 Mtn. at 7. Specifically, he alleges that two of the plea agreement's purported benefits—the government's promise not to charge Leslie with additional crimes in the Middle District of Florida and the government's promise to consider filing a § 5K1.1 motion—were illusory. See Movant's Ex. 1 at 4. That is so, Leslie argues, because (1) "based on Movant's double jeopardy right, the government would have had to have charged related criminal behavior[] in the [Middle District of Florida] in the same indictment," and (2) "Movant was not able to provide the government with enough information to prosecute other defendants for crimes." Id. Yet despite his dissatisfaction with the plea agreement, Leslie does not allege that he would not have pled guilty and would have insisted on going to trial. Hill, 474 U.S. at 58–59; see also Movant's Ex. 1 at 4. Leslie also fails to say why his sentence would have been lower had he pled guilty without the agreement.

The record also contradicts Leslie's allegations. For one, the purportedly illusory benefits were not the only benefits of the Plea Agreement. The government also promised (1) to support a two-level guidelines reduction for

22

acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (2) to support an additional one-level reduction under § 3E1.1(b). Plea Agreement at 4–5. Leslie received the benefit of these guidelines reductions. PSR ¶¶ 56–57.

For another, the agreement's benefits were not illusory. The government promised that if the Court accepted the agreement, the United States Attorney's Office would not charge Leslie with any other federal crimes known to the office at the time of the agreement and that were related to the conduct giving rise to the agreement. Plea Agreement at 3. Contrary to Leslie's suggestion that his "double jeopardy right" precluded the government from charging him with additional crimes anyway, that is false. Under the Fifth Amendment's Double Jeopardy Clause, which protects a criminal defendant from being subjected to multiple prosecutions for the same offense, "[j]eopardy attaches when the jury is empaneled or sworn." United States v. Therve, 764 F.3d 1293, 1298 (11th Cir. 2014) (citation omitted). Jeopardy had not attached when Leslie accepted the plea agreement because no jury had been empaneled or sworn. Thus, the government remained free to seek a superseding indictment. If what Leslie means instead is that additional charges would have been multiplicitous, that too is false. "An indictment is multiplicitous if it charges a single offense in more than one count. A multiplicitous indictment violates double jeopardy principles by giving the jury more than one opportunity to convict the defendant for the same offense." United States v. Stapleton, 39 F.4th 1320, 1328 (11th Cir. 2022)

(internal quotation marks and citation omitted). Given that Leslie admitted during his proffer to sexually abusing three other children and photographing a fourth, and law enforcement forensically discovered 33,000 images of child pornography on his devices, Leslie fails to show that the government could not have lawfully charged him with other crimes. Thus, the promise of no additional charges was not illusory. As for the government's promise to consider whether to file a substantial assistance motion, courts have held that the prosecutorial discretion inherent in such promises does not invalidate a plea bargain. See, e.g., United States v. Kilcrease, 665 F.3d 924, 928 (7th Cir. 2012) (collecting cases). And, because Leslie had been an administrator of a website that hosted child pornography, PSR ¶ 8, Leslie and his attorney could have reasonably believed that Leslie might be able to offer information worthy of a substantial assistance motion. In short, the Plea Agreement contained material, non-illusory benefits, and the Court cannot say it was objectively unreasonable for Mr. Rosenblum to have advised Leslie to accept it.

Also, as to the first part of this claim, Leslie does not allege that he did not understand the benefits and risks of the Plea Agreement—only that it was a bad bargain. But Leslie affirmed under oath that he had read and understood the entire plea agreement and discussed it with his attorney, and that he voluntarily accepted its terms. Plea Tr. at 17–23; see also id. at 29–31. The Court will not "allow an otherwise valid plea agreement to be undone because

the defendant did not obtain 'enough' of a benefit," as that "would undermine the efficacy of such agreements by permitting the defendant to obtain the benefit of the bargain without suffering the detriment." United States v. Williams, 184 F.3d 666, 670 (7th Cir. 1999).

In the second part of this claim, Leslie alleges that Mr. Rosenblum misadvised him that he was facing an "effective life sentence" if he did not accept the plea agreement, and that Mr. Rosenblum failed to review the guidelines calculations with him before he pled guilty. Sec. Am. § 2255 Mtn. at 7; Movant's Ex. 1 at 4. For a 22-year-old defendant facing a cumulative maximum sentence of 60 years in prison, whose guilt was not in serious doubt, the Court cannot say it would have been inaccurate to advise Leslie he was facing an "effective life sentence" if he were convicted at trial.

Further, even assuming the truth of these allegations and that counsel was deficient, Leslie fails to show that the misadvice prejudiced him under Hill and Strickland. The Court informed Leslie at arraignment of the penalties the charges entailed (Crim. Doc. 16, Minute Entry of Arraignment), i.e., a statutory maximum term of 30 years in prison for each count, totaling 60 years. The Plea Agreement also advised Leslie that the cumulative maximum penalty was 60 years in prison. See Plea Agreement at 1–2. And at the change-of-plea colloquy, the Court reminded Leslie that the maximum statutory penalty was 60 years in prison, Plea Tr. at 14–15, which Leslie affirmed he understood, id. at 16.

25

Because the Court "itself explained to [Leslie]—in detail—the consequences of the plea agreement, range of punishment, and sentencing contingencies before accepting [Leslie's] guilty plea …, any failure on the part of [Leslie's] counsel to clearly explain the possible punishment was cured by the district court." United States v. Wilson, 245 F. App'x 10, 12 (11th Cir. 2007); see also Plea Tr. at 9–23.

About Mr. Rosenblum's purported failure to review the guidelines calculations with Leslie, Sec. Am. § 2255 Mtn. at 7, Leslie's sworn statements at the plea colloquy refute any allegation of deficient performance or prejudice. The Court addressed Leslie:

| | |
|---|---|
| THE COURT: | The federal sentencing guidelines apply to your case. |
| | Have you discussed the sentencing guidelines with your attorney? |
| [LESLIE]: | Yes, sir. |
| THE COURT: | I won't go into too much detail about the guidelines since you've discussed them with your lawyer, but I do have to make sure you understand certain things about how the sentencing process works. |
| | The Court will not be able to determine your guideline sentence until after the presentence report has been completed by the probation office. |
| | After it's been determined what guidelines apply to your case, the district judge still has the authority to impose a sentence that is either more severe or less severe than the sentenced called for by the guidelines. So the guidelines are only advisory. The district judge can impose any sentence up to the maximum permitted by law. |

> In determining a sentence, the district judge is obligated to calculate the guideline range and to consider that range and also consider possible departures under the guidelines and other sentencing factors that are listed in a statute, 18 U.S. Code, Section 3553(a).
>
> Also, under some circumstances the government may have the right to appeal any sentence that the district judge imposes and ask a higher court to impose a more severe sentence.
>
> ***
>
> So as we sit here today, nobody can tell you what your sentence is going to be. The sentence imposed could be different than any estimated sentence by your attorney or anyone else has given you.
>
> It could be more severe than you expect, but even if that happens, you'll still be bound by your guilty plea and will not have the right to withdraw it.
>
> Do you understand that?

[LESLIE]:   Yes, sir.

THE COURT:   And do you understand all the things I've just explained about sentencing?

[LESLIE]:   Yes, sir.

Plea Tr. at 11–13. And as noted above, Leslie understood that the maximum potential penalty was 60 years in prison. Id. at 15–16. "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988). Leslie fails to meet that burden here.

27

Thus, the record shows that when Leslie pled guilty, he accepted the possibility the Court could sentence him to 60 years in prison – the same sentence he ultimately received. Even at the sentencing hearing, after learning that his guidelines range was 60 years in prison, Leslie expressed no desire to withdraw his guilty plea, stating instead that he "deserve[d] 60 years and more." Sentencing Tr. at 20. As a result, he cannot show that had Mr. Rosenblum reviewed his guidelines calculations with him beforehand, there is a reasonable probability he would not have pled guilty but would have insisted on going to trial. Hill, 474 U.S. at 58–59.

For all of the above reasons, relief on Ground Three is due to be denied.

**D. Ground Four**

Leslie alleges that Mr. Rosenblum gave ineffective assistance by failing to review the addendum to the PSR with him before sentencing, and failed to present "any witnesses or evidence at his sentencing hearing." Sec. Am. § 2255 Mtn. at 8. He states that "Movant provided counsel with many corrections to the [PSR]," but that "[e]ven with the noted objections and corrections, some inaccuracies remained in the [PSR]." Id.

This claim does not merit relief because it consists of conclusory allegations. Leslie does not describe what points or arguments counsel should have raised based on the addendum to the PSR. He does not identify what

witnesses counsel should have called, describe what they would have testified, or substantiate (through affidavits or otherwise) that the missing witnesses would have offered favorable testimony. See Johnson v. Alabama, 256 F.3d 1156, 1187 (11th Cir. 2001) (offering "only speculation that the missing witnesses would have been helpful … is insufficient to carry the burden of a habeas corpus petitioner." (citation and internal quotation marks omitted)). Nor does Leslie specify what objections or corrections to the PSR counsel should have raised. Moreover, Leslie affirmed at the sentencing hearing that he had reviewed the PSR with Mr. Rosenblum and that counsel had answered all of his questions. Sentencing Tr. at 4. Because "conclusory allegations unsupported by specifics" are not enough to carry the burden of a habeas petitioner, Leslie is not entitled to relief on this ground. Tejada, 941 F.2d at 1559.

**E. Ground Five**

Next, Leslie alleges that counsel gave ineffective assistance by "not securing any benefits for the Movant" after he proffered for the government and disclosed incriminating information that was used against him at sentencing. Movant's Ex. 1 at 5. He alleges that counsel should have negotiated "a more favorable plea agreement or a recommendation by the government of a sentencing reduction … at the sentencing hearing." Id.

The record contradicts this claim. As discussed under Ground Three, the Plea Agreement contained three material benefits: (1) the government's promise not to bring additional charges against Leslie in the Middle District of Florida, (2) the government's promise to support a three-level guidelines reduction for acceptance of responsibility, and (3) the government's promise to consider moving for a substantial assistance reduction. Plea Agreement at 3, 4–7. Because of Leslie's proffer, the government recommended that a below-guidelines sentence of 50 years' imprisonment (but no less) might be warranted. Sentencing Tr. at 42–43.

Leslie fails to show that Mr. Rosenblum's negotiation of the plea agreement was objectively unreasonable. Strickland affords attorneys wide latitude in the plea bargaining process because "the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real. The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision." Premo v. Moore, 562 U.S. 115, 125 (2011). Further, "[t]he prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude Strickland mandates … could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one." Id. Judging Mr. Rosenblum's performance based on his "perspective at the time," free from the distorting effects of hindsight,

Strickland, 466 U.S. at 689, it was not objectively unreasonable for him to advise Leslie to accept the current plea agreement.

Nor has Leslie established prejudice under Hill and Strickland. He does not allege in Ground Five that he did not knowingly and voluntarily accept the terms of the plea agreement or the proffer agreement. Rather, he complains that his attorney did not negotiate a better plea bargain, considering his proffer. But Leslie's complaint assumes that a better plea bargain was attainable. He points to no facts to support a conclusion that the government was amenable to a plea agreement on terms more favorable to Leslie. Thus, Leslie fails to show a reasonable probability that, even had counsel tried to negotiate a better plea bargain, a more favorable agreement would have been presented to and accepted by the Court. Cf. Lafler v. Cooper, 566 U.S. 156, 164 (2010) (where an attorney's error led a defendant to reject a plea deal and go to trial, "a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court …, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."). Because Leslie fails to establish deficient performance or prejudice, he is not entitled to relief on Ground Five.

## F. Ground Six

Finally, Leslie argues that his sentence "is disproportionate when compared to the facts of the case" and amounts to "cruel and unusual punishment" under the Eighth Amendment. Movant's Ex. 1 at 6. He remarkably asserts that "upon further contemplation, the facts of the case are not as horrifying as one might imagine." Id. Leslie thinks that is so because the children he raped or photographed were not physically harmed and they were too young to form memories of the abuse. Id.

Leslie procedurally defaulted this claim because he failed to raise it on direct appeal. "Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted). "Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal," including constitutional claims, "or else the defendant is barred from presenting that claim in a § 2255 proceeding." Id. at 1234 (citations omitted). "A defendant can avoid a procedural bar only by establishing one of two exceptions to the procedural default rule." Id. The first is the cause-and-prejudice exception, under which "a § 2255 movant can avoid application of the procedural default bar by 'show[ing] cause for not raising the claim of error on direct appeal and

32

actual prejudice from the alleged error.'" McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011) (quoting Lynn, 365 F.3d at 1234). The second exception is actual innocence, under which "a movant's procedural default is excused if he can show that he is actually innocent either of the crime of conviction or, in the capital sentencing context, of the sentence itself." McKay, 657 F.3d at 1196.

In his Reply brief, Leslie disclaims any reliance on the actual innocence exception. Reply at 6. But, Leslie contends, he can satisfy the cause-and-prejudice exception because his federal public defender filed an Anders brief on direct appeal. Id. at 5.

The ineffective assistance of appellate counsel may constitute cause to excuse a procedural default. United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000). However, Leslie does not show that appellate counsel's failure to challenge the constitutionality of Leslie's sentence was objectively unreasonable or that, had counsel done so, there is a reasonable probability the Eleventh Circuit would have vacated Leslie's sentence and remanded for resentencing. See Dell v. United States, 710 F.3d 1267, 1273 (11th Cir. 2013) (stating the elements of a claim of ineffective assistance of appellate counsel). Under the Eighth Amendment, a noncapital sentence may be excessive if it is "grossly disproportionate to the offense committed." United States v. Johnson, 451 F.3d 1239, 1243 (11th Cir. 2006) (internal quotations marks and citation

omitted). But because of Congress' broad authority to set the types and limits of punishments for crimes, id. at 1242–43, "a sentence within the statutory limits generally does not violate the Eighth Amendment," id. at 1243. In Johnson, the Eleventh Circuit affirmed a 140-year maximum sentence for a repeat-offender convicted of two counts of producing child pornography and one count of distributing child pornography. Id. at 1242–44. Given that, Leslie fails to show that his own 60-year sentence for two counts of producing child pornography, where he also admitted to sexually abusing at least one child, was "grossly disproportionate to the offense committed." Thus, Leslie fails to establish cause for or actual prejudice resulting from appellate counsel's failure to challenge Leslie's sentence under the Eighth Amendment.

Thus, relief on Ground Six is due to be denied.

## III.   Conclusion

For the reasons stated, and in accordance with the Rules Governing Section 2255 Proceedings, it is **ORDERED:**

1. Petitioner Andrew Ryan Leslie's Second Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 12) is **DENIED**.

2. The Clerk will enter judgment for the United States and against Leslie, and close the file.

3. If Leslie appeals the denial of the petition, the Court denies a certificate of appealability (COA).[8] Because this Court has determined that a COA is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination will serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 12th day of September, 2022.

BRIAN J. DAVIS
United States District Judge

lc 19
Copies:
Counsel of record
Petitioner

---

[8]     This Court should issue a COA only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court finds that a COA is not warranted.

35